[No. 11572. In Bank. — February 17, 1887.]

R. A. FISK, Jr., by R. A. FISK, His Guardian ad Litem, Appellant, *v.* CENTRAL PACIFIC RAILROAD COMPANY, Respondent.

Negligence — Master and Servant — Injury to Child — Fellow-servants. — A master is not liable for injuries inflicted on one servant by the negligence of another servant in the same common employment, unless such injuries are traceable to the personal negligence of the master. This rule is not altered by the fact that the party injured is a child.

Id. — Combined Negligence of Master and Servant. — If the injuries inflicted on the servant are caused by the combined negligence of the master and a fellow-servant, the master is liable therefor.

Id. — Dangerous Employment — Knowledge of Risk — Duty of Master to Instruct Youthful Employees. — Where a servant has equal knowledge with the master of the danger incident to the work, he takes the risk upon himself if he goes on with it. This rule, however, presupposes that the servant has sufficient discretion to appreciate the dangers incident to the work, and has no application to the case of young and inexperienced children. In such a case, it is the duty of the master not only to warn the child, but to instruct him as to the dangers of the employment and the means of avoiding them.

Id. — Foreman — Boss of Room — Unauthorized Direction. — The plaintiff, a child twelve years of age, was employed by the foreman of the defendant's boiler-shop to work in the tool-room connected therewith, and was instructed by him to obey the boss of such room. His work consisted in cleaning tools, putting them in place, giving them to the employees, and in doing errands. On the day of the injury in question, there being no work for him in the tool-room, he was told by the boss to go into the adjoining boiler-room for work. This he did, and while there he *was directed by one of the employees of that room to assist in the working of a dangerous machine.* In the performance of this work, he

incurred the injury sued for.   The foreman of the boiler-shop had full control over it, and was authorized to employ and discharge the hands. The boss of the tool-room was merely authorized to direct the manner in which the work of that room was to be performed, and had no power to employ the hands.   *Held,* that the boss of the tool-room had no authority to direct the plaintiff to seek employment in the boiler-room, and that the defendant was not liable for the injury.

APPEAL from a judgment of the Superior Court of Sacramento County, and from an order refusing a new trial.

The facts are stated in the opinion.

*Freeman, Johnson & Bates,* for Appellant.

*S. C. Denson,* for Respondent.

SEARLS, C. — This is an action to recover damages for a personal injury received by plaintiff, while in the employ of defendant.

A judgment of nonsuit was entered in the court below, from which judgment, and from an order denying a new trial, the plaintiff appeals.

The defendant is a corporation organized under the laws of the state of California.

At the trial there was testimony tending to show that in September, 1883, the plaintiff, who was of the age of about twelve years, applied to Price Davis, assistant foreman in defendant's boiler-shops · in Sacramento, for work, and was informed he would have to see Charles Hooper, the foreman.   He saw Mr. Hooper accordingly, who gave him work in the tool-room, under David Snape, who was the boss of such room, and whom he was instructed to obey.

His principal work was in cleaning the tools, putting them in place, giving them to the men, doing errands, etc.   He also seems to have been engaged for nearly a month in heating rivets.

On the first of May, 1884, plaintiff went to the shop,

and there being no work for him in the tool-room, he was told by the boss to go into the shop and see if there was anything for him to do there.   In the shop he was requested by Price Davis, Jr., a young man aged nineteen, and a son of the assistant foreman, to go into the fire-box of a boiler and wipe a tap, in place of another boy named Downs, who was engaged in the work, and whom, young Davis said, he wanted to help him at something else.

The precise testimony on this point is as follows:—

" I went into the shop and met Price Davis, Jr., and he asked me if I was doing anything; I told him no, I was not doing anything, and he told me that he wanted me to go in and wipe the tap for him.   He said he wanted another boy to help him.   Before that there was a boy named Downs, that was inside of the fire-box, and Downs was going to help him do some work.   I asked him if I could not help do the work, and he said no.   He went off and staid about five minutes, and came back and said his father told me to go into the fire-box. . . . . He was the son of Price Davis, the assistant foreman," etc.

The tap was being used by one John Soule, to drill holes through the fire-box, and to cut threads in them to receive screws, and was propelled by machinery on the outside, which gave to it a revolving motion at the rate of one hundred revolutions a minute.

The office of plaintiff was to receive the tap when it came through, clean it from the particles of iron which adhered to its oiled surface, and pass it outside the boiler to Soule for readjustment.

There were two methods for cleaning the tap; one was to wait until it came entirely through and was detached from the machine, which was entirely safe, but slow; the other was to wipe it as it came through, and while in motion, which was dangerous.

Plaintiff testifies that Soule " told me to wipe off the

tap in a hurry, and told me to wipe it off while it was
running."

While engaged in wiping the tap with a piece of coarse
cloth, the instrument caught the cloth, which was around
the plaintiff's hand, twisted and broke his arm, and in-
jured him severely and permanently.

Plaintiff had previously been employed in a boiler-
shop at Oakland, and so informed Hooper, the foreman
of the shop, when he applied for work.

Soule was a workman in the shop, and usually had
charge of the tap.   Plaintiff says: " When I went up to
the tap Soule asked me what I was going to do.   I told
him I had come to wipe off the tap.   He said, ' What are
you going to wipe it off with?'   I told him with a sack,
and he told me to go inside, and he said wipe it off while
it is running."

From the nature of the employment and the instru-
ment described in the testimony, we have no doubt of
two propositions:—

1. It was dangerous business to wipe the tap while in
rapid motion, in the manner pursued by plaintiff.

2. A man of mature years, in full possession of his
faculties, and gifted with ordinary ingenuity, could have
performed the task while the instrument was in motion
without material risk.

The rule is well settled in England and the United
States, that the maxim *respondeat superior* does not apply
so as to make a master responsible for injuries inflicted
on one servant by the negligence of another servant, in
the same common employment, unless such injuries are
traceable to the personal negligence of the master.

The law implies a contract on the part of the servant,
when he enters into the service, that he will assume the
ordinary risks which are incident to the employment,
among which is the risk of suffering hurt and injury
from the negligence of his fellow-servants.

The boy (plaintiff) was directed to go into the fire-

box to work by Price Davis, Jr., who seems to have been a hand in the shop, who was a son of the assistant foreman, and who told the plaintiff that his father (the assistant foreman) so directed; but there is no evidence to show that the assistant foreman gave any such order.

The order of Soule directing the plaintiff to clean the tool while in motion was improper, but it was the negligence of a fellew-servant engaged in the same general employment.

The rule which excuses a master from liability where an injury is caused by the negligence of a fellow-servant is not altered by the fact that the party injured is a child. (*King* v. *Boston etc. R. R. Co.,* 9 Cush. 112; *Chicago R. R. Co.* v. *Harney,* 28 Ind. 28; *Ohio R. R. Co.* v. *Hammersley,* 28 Ind. 371; *Gartland* v. *Toledo R. R. Co.,* 67 Ill. 498; *Brown* v. *Maxwell,* 6 Hill, 592.)

We conclude, therefore, that the plaintiff cannot recover for the injuries which he received, either by being placed by a fellow-servant in a dangerous place, or by the negligence of his fellow-servant in directing him in the manner in which he was to perform his work, unless the negligence of his fellow-servants was in some way combined with the negligence of the defendant, so as to produce the result.

If the negligence of the master combines with the negligence of a fellow-servant, and the two contribute to the injury, the servant injured may recover damages of the master. (*Crutchfield* v. *Richmond R. R. Co.,* 76 N. C. 320; *Booth* v. *Boston etc. R. R. Co.,* 73 N. Y. 38; *Paulmier* v. *Erie R. R. Co.,* 34 N. J. L. 151; *Cayzer* v. *Taylor,* 10 Gray, 274; S. C., 69 Am. Dec. 317.)

Was the defendant guilty of any such negligence as rendered it liable?

There is nothing in the testimony to show any negligence in the selection of Soule as an employee, or tending to bring home to the defendant knowledge of his carelessness.

We must, therefore, look to the circumstances under which the plaintiff sought work in the boiler-shop, for a basis upon which to determine whether or not defendant or its servants in authority were guilty of wrong.

The first question manifestly is as to the extent of the authority conferred upon Snape, the boss of the tool-room, and if it shall be found that he possessed the requisite power to bind the defendant by his direction to plaintiff; then, second, we may inquire into the manner in which his authority was exercised.

Recurring to the testimony, we find: —

1. That Snape was boss of the tool-room, presumably connected with the boiler-shop, and as such had charge of the tool-room.

2. That Hooper was foreman of the boiler-shop, and had authority to employ men therein.

3. That when plaintiff applied for work, Hooper employed him to labor in the tool-room, took him to Snape, the boss, and told him to obey the latter, which he did.

4. At the end of eight months, and on the first day of May, 1884, there being nothing for plaintiff to do in the tool-room, he was directed by Snape to go into the boiler-shop and see if he could get any work there; and he went to the shop, where he obtained the employment in the manner and with the result hereinbefore mentioned.

"Where the servant has equal knowledge with the master of the danger incident to the work, he takes the risk upon himself if he goes on with it." (Wood on Master and Servant, sec. 349.)

This doctrine presupposes that the servant has sufficient discretion to appreciate the dangers incident to the work, and has no application to the case of young and inexperienced children.

In such a case it is the duty of the master not only to warn the child, but to instruct him as to the dangers of the employment and the means of avoiding them.

To a mere child like the plaintiff in this case, dangers

which would be patent to the adult of experience are or may be latent. (*Coombs* v. *New Bedford C. Co.*, 102 Mass. 572; *Grizzle* v. *Frost*, 3 Fost. & F. 622; *Dowling* v. *Allen*, 74 Mo. 16; *Railroad Co.* v. *Fort*, 17 Wall. 554; *Kline* v. *C. P. R. R.*, 37 Cal. 400; *Sullivan* v. *India Mfg. Co.*, 113 Mass. 398; *Hill* v. *Gust*, 55 Ind. 49.)

These cases proceed upon the theory of the enhanced duty of the employer in cases of the employment of minors, without knowledge of the risks they are to assume.

This duty performed, the minor properly instructed, and he stands upon the same plane with other servants, in reference to the risks incident to the employment, and those arising from the want of care in his fellow-servants.

In the cases cited *supra*, no question was made as to the authority of the superintendent to bind his principal by ordering the thing done which produced the injury. In all of them the service to be performed was within the scope of the authority conferred.

Here the question is, Could Snape bind the defendant by the order he gave the plaintiff to seek work outside of his own peculiar department?

He was a *boss* in the tool-room, and as such, we may fairly assume, he was authorized to control and direct the manner in which the work of that room was to be performed, and all other things relating to the orderly and proper conduct of his branch of the business. But it does not appear that he was authorized to employ hands for any purpose.

Charles Hooper was the vice-principal of the defendant in the boiler-shop, with full control and authority, and authorized to employ and discharge help. He employed plaintiff and directed him to obey David Snape; but he employed him to work in the tool-room, and the instructions given to plaintiff to obey the boss of that room must be construed in view of the employment.

We cannot, by any reasonable intendment, hold that the authority of David Snape was enlarged or extended by this direction of Hooper. It simply relegated the plaintiff to the control of Snape, within the purview and subject to the employment which Hooper had given him.

The employment to work in the tool-shop was the subject-matter, and the control given to Snape and the directions to plaintiff to obey him must be construed with reference to and confined to such subject-matter.

Plaintiff was directed to obey Snape, but it was as a laborer in the tool-room that he was so ordered.

We know of no rule or construction by which the order given under such circumstances, and for such a purpose, can be held to authorize Snape to employ the plaintiff for an entirely different purpose from that contemplated by Hooper, and thereby to bind the defendant.

The roving commission given to the plaintiff by Snape, to seek employment in the boiler-shop, unless intended to direct him to the persons in charge of such shop, involved an element of carelessness, but it was not the negligence of the defendant, or of its agent or vice-principal, its *aliter ego* authorized, or held out as being authorized to speak for it.

We conclude, therefore, that as Snape was not authorized to send plaintiff to the boiler-shop in quest of employment, and that as he was not directed or employed by any one so authorized, the defendant is not responsible for the injuries which he received through the carelessness (if any) of defendant's employees.

It follows that the nonsuit was properly granted, and the judgment and order appealed from should be affirmed.

FOOTE, C., and BELCHER, C. C., concurred.

The COURT.— For the reasons given in the foregoing opinion, the judgment and order are affirmed.

THORNTON, J., dissented.

Rehearing denied.