PATRICK HEFFEREN *vs.* NORTHERN PACIFIC RAILROAD COMPANY.

THOMAS HEFFEREN, an Infant, by his Guardian, *vs.* SAME.

March 2, 1891.

| 45 471 |
| 50 164 |

Master and Servant—Voluntary Selection and Use of Obviously Defective Tool.—A master who provides and keeps proper tools for the use of his servants, whose duty it is to select such as they require for their work, is not in general responsible if a servant voluntarily uses a tool which has become obviously defective and unfit for use, and is injured by reason of such defect.

Same—Boy of 17 Injured by Use of Battered Side-Set.—This principle applied in respect to a "side-set,"—a tool for cutting iron,—the power being applied to it by means of a heavy hammer, with which the side-set is struck by one person while another holds the side-set. The tool had become so battered from use that fragments were obviously liable to be broken off by a blow of the hammer. This did occur, the detached fragment putting out the eye of the servant holding the side-set. *Held*, that the master was not responsible, although the servant was only 17 years of age.

Same—Fellow-Servants—Assumption of Risk by Minor.—A servant, although a minor, assumes the risk of the negligence of fellow-servants as a hazard incident to his service.

Appeal—Review of Evidence without Motion for New Trial.—The court having ruled upon the sufficiency of the evidence on a motion that a verdict be directed for the defendant, the sufficiency of the evidence to sustain the verdict may be reviewed on an appeal from the judgment, although no motion for a new trial had been made.

Actions brought in the district court for Crow Wing county and tried before *Mills*, J., (acting for the judge of the 15th district.) In the first case plaintiff had a verdict of $3,000, and, in the second, of $7,000. In each case the defendant appeals from the judgment.

*John C. Bullitt, Jr.*, for appellant.

*W. H. Adams* and *J. B. Douglas*, for respondent.

DICKINSON, J. These two actions are for the recovery by a father (Patrick) and by his minor son (Thomas) of damages for an injury suffered by the son while engaged as a servant of the defendant in

its shops at Brainerd.   The father seeks to recover for loss of service of his son and for expenses to which he was subjected by reason of the injury; the son, for the personal injury to himself.   The facts in the two cases are substantially the same, and both may be considered together.   When the accident occurred (December, 1886) Thomas was 17 years old.   He had been for about two years and a half at work for the defendant,—at first in the building of the shops, and after that in the shops.   His work in the shops had been of a somewhat miscellaneous character, including the cleaning of machinery, working in blacksmith and boiler shops, operating a steam-hammer, pointing bolts, heating rivets, and, as he says, doing whatever he was directed to do.   His father was a machinist in the same shop.   On the occasion under consideration the foreman had ordered Thomas to go to the engine-house to work with one Torkleson cutting off the heads of rivets on the tank of a locomotive.   He found Torkleson already there, with the tools which they used.   These consisted of a hammer and what is called a "side-set."   This is a tool designed to be used for such purposes.   It is made of steel, has a cutting edge, and the opposite side, which may be designated the "head," is formed for and intended to receive the blow of a hammer.   A handle is fitted to it, by which it is held by one person, with the cutting edge against the rivet or substance to be cut, while another strikes the head of the side-set with a hammer.   On this occasion Thomas at first used the hammer, while Torkleson held the side-set.   Then they changed, and, while Thomas was holding the side-set and Torkleson using the hammer upon it, a thin scale of steel broke from the head of the side-set as the hammer fell upon it, and was driven into the plaintiff's eye.

The cases show no cause of action, unless it be negligence on the part of the defendant in respect to the condition of the side-set. It does not appear that Torkleson was not a competent, skilful workman; and even if, on this occasion, he was negligent, that would not justify a recovery.   One of the ordinary risks incident to such service is that of the negligence of fellow-servants, and this risk a servant takes upon himself as incident to his service, even though he be a minor.   *King* v. *Boston & Worcester R. Co.,* 9 Cush. 112; *Curran* v. *Merchants' Mfg. Co.,* 130 Mass. 374; *Brown* v. *Maxwell,* 6 Hill,

592; *Gartland* v. *Toledo, etc., Ry. Co.,* 67 Ill. 498; *Chicago & Great Eastern Ry. Co.* v. *Harney,* 28 Ind. 28; *Ohio & Miss. R. Co.* v. *Hammersley,* Id. 371; *Fisk* v. *Central Pac. R. Co.,* 72 Cal. 38, (13 Pac. Rep. 144.) Nor is there ground for complaining that the plaintiff was required to do work of a more dangerous character than that which was within the scope of the service for which he was employed, or such as was unsuited to his years and experience.

The evidence tended to show that the head of this side-set had become much worn and battered, the pounded surface having become rounded over and a ragged edge formed; and that pieces of the metal were more likely to be broken from it than would be the case if it were not in that condition, although this is liable also to occur even with a tool not thus worn. This condition of the tool was the ordinary result of use. The uncontradicted evidence showed that the defendant kept a tool-repairer in the shops, whose business it was to repair the tools; that the defendant kept a full supply of tools of this kind in a closet and scattered about the shop; that when a workman was to use a tool he would get it for himself, selecting such as he required; and that, when a workman found that a tool needed to be repaired, he would take it to the tool-repairer for that purpose. There was nothing to show that in selecting tools for use the workmen had not opportunity to act deliberately, and to select such as might be fit for use in the work to be done.

Under the circumstances here presented, we are of the opinion that the recovery cannot be sustained, unless the minority of Thomas Hefferen affects the result. For the present we will disregard that feature of the case, and consider it as it would have been if he had been of full age. The defect was as much the ordinary and natural result of the use of the tool as the dulling of the cutting edge of it would be. The defect, and whatever risk there may have been, were perfectly apparent; and if a workman should of his own choice, and unnecessarily, use a tool thus plainly defective, when others were provided for his use, he is not absolved from the consequences of his own choice. It cannot be said to be the duty of a master, under ordinary circumstances, who provides and keeps proper tools for the use of his servants, to see to it that all such as from use become obviously unfit for

service are removed beyond the reach of his servants. The servant is no less bound to be careful concerning his own safety than is the master; and, where proper instruments are provided for the use of the servants, and their ordinary duties require and enable them to select such as are suitable, they must act with reasonable discretion. Under such circumstances, it is a want of reasonable discretion for them to act blindly upon the assumption that none of the implements will ever become dull, or worn, or otherwise obviously defective. All human experience is to the contrary. The responsibility of the master for injuries resulting from unsafe instruments or machinery may be said to rest upon the ground that these are the means by which the servant is expected and required to do his work. The master furnishes them for that purpose, and expects and intends that the servant shall use them. The servant knows that this is expected of him. He may, therefore, in general assume without particular inspection that the instruments which he is thus required to use are reasonably safe. But when from use they have become obviously defective and unfit, and the master has provided others, so that the servant knows that he is not required to use the former, the reason of the law holding the master to responsibility is inapplicable. If the master provides the proper tools for the use of his servants, responsibility for neglect to remove from the premises such as have become obviously unfit for use, if such responsibility exists, must rest, not on the ground that it is the duty of the master to furnish reasonably safe means for the prosecution of the work which his servants are required to do, but upon the ground that he is chargeable with negligence in suffering dangerous things to be where his servants may be injured by them. This principle is applicable under many circumstances, as in respect to concealed dangers, like a pitfall. It cannot be applied under the circumstances here stated without ignoring the duty of the servant to exercise ordinary care in respect to matters concerning which he has no right to assume that there is no danger. If he knows that safe tools are provided for his use, he cannot be expected to use those which have become so defective that the defects could not be overlooked. Circumstances may be such as to require the master to remove all defective instruments, even though the defect be perfectly

apparent; as, for instance, where the duties of the servants in a dangerous employment are such that it is to be expected that they may use such instruments as may be at hand, there being no opportunity to observe even plainly apparent defects. But this case presents no such exceptional or peculiar conditions. According to the evidence it must be taken as a fact that the servants used this particular tool because they did not choose to get another. They knew its condition. They could not have used it for any length of time without knowing it. If it had the defects which alone constitute the ground of the recovery, they must have known that it was more or less probable that the blow of a hammer weighing eight or ten pounds upon the battered steel would break fragments from it. They must have known that such fragments were as likely to strike the eye as any other place no larger than the eye, and that such an occurrence might be expected to involve serious consequences. Of this they took the risk upon themselves. They probably considered that the chances of a fragment being broken off and striking so small an object as the eye were so remote that it was unnecessary to get another tool. But as the case is presented we think that it must be concluded that they knew the defect and the possible consequences; that, other tools being provided for their use, they were not justified in disregarding these things, and in assuming that because this worn implement remained among the tools in the shop it was safe to use it, under conditions which would leave the eyes exposed to injury if fragments should be broken off. The case does not justify the conclusion either that this was required or expected of the servants, or that they had reason for supposing that it was.

It may be said that this servant who was injured did not select this tool for use, but that he found it in the possession of Torkleson when he went to work with him. That would not affect the result. The plaintiff cannot charge the master with responsibility for any negligence of which Torkleson may have been guilty. But the fact that the plaintiff found that Torkleson had taken an unfit tool for the work would not excuse him if he knew the defect. He was not obliged to use such a tool merely because Torkleson had taken it for use.

We have considered the case as though Thomas Hefferen had not been a minor. But the majority of the court are of the opinion that he was of such age and experience that his minority does not affect the result. It is to be presumed that he had ordinary intelligence and habits of observation. He was required to exercise the discretion belonging to his years and experience, and it is considered that this would have been quite sufficient to have protected him from this unfortunate accident. The defendant had no more reason to expect that he, any more than an adult, would use a plainly defective tool when others were provided for use. As to this, speaking only for myself, I am not satisfied that the case was not one for the jury.

Upon the grounds above stated it is considered that the cases did not justify the verdicts.

It is urged that the sufficiency of the evidence should not be considered, because there were no motions for new trials; but the court below passed upon the question when it refused motions to direct verdicts for the defendant.

Judgments reversed, and new trials granted.

NOTE. A motion for a reargument of this case was denied April 9, 1891.

---

Upon the taxation of appellant's bill of costs in this court, the respondent objected to the item of $59.56, being "amount paid court reporter for copy of testimony," on the ground that if taxable at all, it should be taxed in the district court, not being a disbursement incurred in this court, or in perfecting the appeal; and also objected to the item of $145 for printing the paper-book as excessive, greater than the legal charge, more than was actually paid by appellant, and because "said paper-book is needlessly long and prolix, and said sum was greater than was necessary for printing the same." The objections were overruled by the clerk, and on appeal from his taxation the following opinion was filed April 21, 1891:

*By the Court.* On this appeal from the clerk's taxation of costs the objection that a greater sum was paid for the printing of the paper-book than was necessary cannot be considered, in the absence

of any affidavit showing that the charge is excessive. Upon another objection made, we are justified in saying that some 30 pages contain matter having no bearing upon any question presented by the appellant, or which it could have reasonably expected to present, and the respondent should not be burdened with the cost of printing such matter. We refer to the testimony of the physicians. While we have examined the case to see what ought to have been omitted, we will say, for guidance in other cases, that a party objecting to the taxation should specify such parts of the case as he claims to have been improperly included. Upon the ground above stated, the sum of $30 will be deducted from the costs as taxed by the clerk.