[No. 893. Decided August 29, 1893.]

WILLIAM S. WATTS, *Appellant*, v. GEORGE E. HART AND TACOMA EASTERN RAILROAD COMPANY, *Respondents*.

NEGLIGENCE — DEFECTIVE APPLIANCES — MASTER AND SERVANT — ASSUMPTION OF RISKS — FELLOW SERVANTS.

The fact that a spur track is so constructed that cars may be drawn therefrom to the main line by an engine, or "staked off," and that the men engaged in removing the cars choose the method of "staking off," whereby injury results to an employé, does not render the railroad liable on the ground of defective construction of the track or the omission to furnish safe and suitable appliances to its servants.

The dangers incident to the moving of cars by "staking off" are so patent to observation that a servant undertaking such work necessarily assumes the risk, and cannot hold his employer liable for a failure to warn him of the danger.

The fact that a servant undertakes a dangerous piece of work by the direction of a fellow servant who does not stand in the rela-

tion to him of vice principal, will not render the principal liable for injuries received.

The master is not liable for accidents occurring to a servant after he has provided such appliances as are reasonably safe and adequate to do the work required.

The engineer and fireman of a locomotive and a common laborer who are all employed by a mill owner in the work of moving lumber cars are fellow servants, and for injuries received by the laborer on account of the engineer's negligence the master is not liable. (DUNBAR, C. J., dissents.)

*Appeal from Superior Court, Pierce County.*

*Joseph C. Dillow,* and *Remington & Reynolds,* for appellant.

*Stevens, Seymour & Sharpstein,* and *A. R. Titlow,* for respondents.

The opinion of the court was delivered by

ANDERS, J.— This is an appeal from a judgment of nonsuit rendered in an action brought by the appellant to recover damages for personal injuries sustained by appellant while engaged in "staking" cars at Hart's mill, on the line of the Tacoma Eastern Railroad.

The facts, briefly stated, are as follows: The respondent George E. Hart was the owner and operator of a sawmill near the city of Tacoma on the line of a railroad belonging to the Tacoma Eastern Railroad Company, a corporation, and one of the respondents herein. The track of this railroad extended from a point in the city of Tacoma to certain timber just south of the city, and the business carried on over the track consisted exclusively in transporting timber to the mill of George E. Hart, and lumber from the mill to the city of Tacoma. On the 19th day of May, 1891, and subsequently, until after the injury complained of, the railroad seems to have been operated by George E. Hart as part of the business of the mill. The railroad, at the time of the accident, consisted of a track running by

the mill, designated by the witnesses as the main line, and
spur track running from a switch in the main line, and in
the same general direction, to the platform in front of the
mill.   This spur was about three hundred and seventy-five
feet long, and was distant twelve feet from the main track
at the point of greatest distance, and from that point grad-
ually approached the main track until it reached the switch
and connected with it.   This spur track was completed ·
about May 15, 1891.   There was a grade of two per cent.
in both the main and spur tracks.   The grading of the spur
track was done by the men employed about the mill, and
the rails were laid by the railroad company.   On May 19,
1891, the engine used on the tracks belonged to George E.
Hart.   On that day he hired an engineer, Lawrence Hurl-
burt, a fireman, Tom Smith, and the appellant, as a com-
mon laborer, to do whatever he was called upon to do.
From the 19th to the 22d of May, 1891, the appellant was
employed by J. F. Smith, the foreman at the mill, in
grading about the mill.   This foreman, in the absence of
George E. Hart, had entire charge and control of the busi-
ness carried on at the mill.   Among the employés at the
mill was one Kelley, tallyman, who, on May 22d, was en-
gaged in loading cars with lumber and in piling lumber on
the platform in front of the mill.   On that day the fore-
man, Smith, sent the appellant to work with Kelley, piling
lumber on the cars and platform.   The cars upon which
they were putting the lumber stood on the spur track in
front of the said platform.   At that time there were also
upon the spur tracks, south of the cars being loaded, other
cars, one or two of which were loaded.   After the appellant
had worked with Kelley for about three hours Kelley told
him to go and help the engineer move out those cars.   The
appellant got down off the platform and walked over to the
engine which was on the main track, and told the engineer
that Kelley sent him to help get out the cars.   The en-

gineer said: "All right; you want to get a stick;" and, pointing to a piece of fir timber about sixteen feet long and four by six inches in thickness, lying on the ground near the engine, said: "There is one; take that." Tom Smith, the fireman, took hold of one end of this piece of lumber, and the appellant held the other. The fireman placed his end of the stick against the car to be moved, and the appellant held his end of it until the locomotive moved up against it. When the engine struck the end of the stick, the appellant let go, and it fell to the ground. Appellant and the fireman again placed the stick in position, and the fireman told Watts to hold on to the stick, which he did. The engine approached "as fast as a man would walk," and when it struck the stick it broke in Watts' hands, threw him to the ground, and severely injured him. The appellant was a young man of about twenty-three years of age, and had been for four years a fireman in charge of a stationary engine in Boston, and claimed to be competent to be a locomotive fireman, but had no special knowledge of railroading, and had never seen cars moved by the process of staking, and was not informed by any one as to the danger incident to the operation.

The particular negligent acts and omissions on the part of the respondent alleged in the complaint as the cause of appellant's injury were the construction and maintenance of the tracks as laid by the railroad company, failure to give appellant warning in regard to the dangers to which he was exposed, and to furnish reasonably safe and proper appliances with which to do the work required of him, and the employment of an incompetent and untrustworthy engineer, who carelessly and unskillfully brought the engine at a high and dangerous rate of speed in contact with the stick while held by appellant, thereby greatly increasing

the dangers of appellant's position, and the liability of breaking said stick and injuring appellant.

No testimony whatever was given tending to show incompetency on the part of the engineer, and the only evidence as to the rate of speed was that the locomotive approached the stick "as fast as a man would walk," and no attempt is here made to support these allegations of incompetency or of negligence in employing the engineer.

It was shown by the testimony of several experts that the method of moving cars by "staking" is attended with danger, and is not usually resorted to except in cases of necessity, the danger consisting in the liability of the stick, or stake, to break and injure the person holding it. And it is claimed by appellant that the laying and maintaining of the tracks, where constructed and used, so as to make a resort to this method of moving cars necessary, was an act imminently dangerous to the lives of those who were compelled to use them, and amounted to the maintenance of a nuisance by the respondents, and especially by the railroad company, and that the company, therefore, negligently failed to furnish, in providing the tracks, reasonably safe and suitable appliances to conduct the business in which it was engaged, and that the injuries sustained by the appellant were the result of this alleged negligent construction. It is not claimed that either the main track or spur were not, as a matter of fact, well and properly constructed, but it is contended that the position and connection of the tracks compelled the appellant to engage in an unusually dangerous business, and that such construction of the tracks was not only negligent but was the direct and proximate cause of appellant's injuries.

While we unhesitatingly agree with counsel for the appellant that the respondent railroad company was in duty bound to furnish reasonably safe tracks for the accommo-

dation of all persons who might have occasion to use its road, we are not prepared to affirm that the laying of the tracks at that particular place and in that particular manner was such a negligent act as to render it liable for injuries sustained by persons moving cars thereon, and over whom it had no direct control. From the point where the spur diverged from the main track down to the city of Tacoma, the grade was so abrupt that it was deemed unsafe to connect the lower end of the spur with the main track, on account of the liability of the cars getting away and running down into the city; and it was therefore considered less dangerous to push the cars up the spur and onto the main track, so that they might be taken down behind the engine instead of in front of it, as they would have to be taken if they were drawn up the spur track by the engine. In any event, the operating of a railroad at that place was necessarily attended with danger, and we are not able to say that the company did not adopt the least dangerous plan in constructing the tracks as it did. But, however that may be, it was not absolutely necessary that cars should be taken off the spur track by the method adopted at the time appellant was injured. The necessity for so doing depended entirely upon the question whether it was essential that they should go ahead of the engine or behind it, for either way, according to the evidence, was practicable. The men engaged in removing the cars were therefore not *compelled*, as claimed by appellant, to adopt the method pursued by the manner in which the tracks were constructed. It was simply a matter of choice as to which was the better and safer method to pursue.

So far, then, as the railroad company is concerned, we fail to discover any act or omission which can justly be said to have proximately caused the injury complained of, and it therefore follows that as to it the non-suit was properly granted.

We come now to the question of the liability of the respondent Hart. As already stated, he was the owner of the locomotive, and on the occasion in question, the engineer, fireman, Kelley, the tallyman, who had charge of the loading of the cars, and the appellant Watts, were all in his service and under his control, or, in his absence, under the control of his *alter ego*, Smith. If he negligently failed to discharge any duty he owed appellant, by reason of which the latter was injured, there can be no doubt of his liability in this action. One of these duties was to inform the appellant of the dangers incident to the service required of him, if unknown to him, or not patent to observation, and another was to furnish him with reasonably safe appliances and means with which to accomplish the work he was set to do. And it is contended by the appellant that Hart was derelict in regard to both of these duties. It was shown that the appellant was not warned by any one of the dangers incident to "staking" cars, but it was also shown that he had equal knowledge with his employer Smith of whatever danger there was incident to the work, and he, therefore, took the risk upon himself. *Fish v. Central Pacific R. R. Co.*, 72 Cal. 38 (13 Pac. Rep. 144); Wood on Master and Servant, § 349; *Atlas Engine Co. v. Randall*, 100 Ind. 293.

The evidence discloses that at the time the appellant was injured none of the men there, including the foreman in charge, knew anything about the business of "staking" cars. They were all on a par as to knowledge of the danger to be guarded against. In fact, the witnesses all agreed that the real element of danger in such cases is a possibility of injury to persons so employed resulting from the slipping or breaking of the stake used in pushing the cars. And it would seem that the fact that such a thing might happen would be so obvious that, as was said by one of the witnesses for plaintiff, any man of ordinary intelli-

gence ought to see the danger.    We think that, under the circumstances, whoever had the right to require the services rendered by the appellant was justified in assuming that he would see and comprehend the hazards of the undertaking without special warning, even if appellant's knowledge had been shown to be inferior to that of the men by whom he was directed.   See *Riley v. Railway Co.*, 27 W. Va. 145.

It is insisted, however, that the appellant did not assume the risks incident to the work performed by him, because he was simply obeying the orders of his superior which he would not have been justified in declining to obey.    But we fail to find any evidence whatever showing that the respondent Hart gave any direction or authority to the appellant to assist in the moving of cars, or knew that he would be so employed.    The foreman Smith testified positively that he at no time gave such an order.    He simply sent the appellant to Kelley to load cars and pile lumber on the platform.    That was Kelley's business, and there is no evidence that he had anything to do with the moving of the cars, or any authority to direct the appellant to assist in moving them.    And that being so, he could not bind the defendants, or either of them, by the order he gave Watts to assist the engineer in getting out the cars. *Fisk v. Central Pac. R. R. Co.*, *supra.*

It is also claimed, on behalf of the appellant, that the respondent Hart increased the ordinary dangers in this instance, by not supplying a proper stick with which to do the work.    As we have already indicated, it is the duty of a master to furnish his servant with reasonably safe and proper means and appliances with which to do the work required.    This doctrine is well settled by the authorities, and is based upon reason and justice.    See *Roddy v. Mo. Pac. Ry. Co.*, 104 Mo. 234 (15 S. W. Rep. 1112); *Consolidated Ice Mach. Co. v. Keifer*, 134 Ill. 481 (25 N. E.

Rep. 799); *Swords v. Edgar*, 59 N. Y. 28; *Nugent v. Boston, etc., R. R.*, 80 Me. 62 (12 Atl. Rep. 797); *Trinity, etc., Ry. Co. v. Lane*, 79 Tex. 643 (15 S. W. Rep. 477), and *Lake Superior Iron Co. v. Erickson*, 39 Mich. 492. But it would be adopting a rigid and unjust rule, and one not warranted by the adjudged cases, to hold that the master warrants absolutely the safety of all appliances used in conducting his business. *Holden v. Fitchburg R. R. Co.*, 129 Mass. 268.

Accidents will happen in using the best known appliances, and to the most careful persons, and all that the law requires is that the master shall provide such appliances as are reasonably safe and adequate. If accidents then occur, the master is not liable. In this case no particular stick was designated or provided for the use of the appellant. Indeed there is nothing in the record showing that either Hart or his foreman and vice principal knew that at that particular time the appellant would require the use of any stick whatever, or would be engaged in moving the cars. But, if the foreman had required the use of the stick which was used, we do not think the respondent would be liable for the injury that was sustained by the appellant on account of its breaking. There was nothing in its appearance or size indicating that it was unsuitable for the purpose required. It was a newly sawed, heavy and apparently strong piece of timber, "all that one man could hold," and the only defect in it— and that appears not to have been observed by the appellant, or any one else, until after the accident—was a small knot upon one side extending about three-quarters of an inch beneath the surface. But irrespective of any other considerations, we are of the opinion that the non-suit was properly granted on the ground that the negligence shown, if any, was that of a fellow servant.

We have no doubt that all of the parties engaged with the appellant in the moving of the cars were his fellow serv-

ants.  Appellant while so engaged was in the same employ-ment as Hurlburt and Tom Smith.  If, therefore, Hurlburt, the engineer, was negligent in the management of the engine, as claimed by the appellant, or in not moving the cars up nearer to the main track before undertaking to "stake" them, thereby increasing the hazards otherwise incident to the business in hand, and causing the injury complained of, the respondents are not liable.  *Sayward v. Carlson*, 1 Wash. 38 (23 Pac. Rep. 830); *Crispin v. Babbitt*, 81 N. Y. 516; *O'Brien v. American Dredging Co.*, 53 N. J. Law, 291 (21 Atl. Rep. 324); *Waddell v. Simoson*, 112 Pa. St. 567 (4 Atl. Rep. 725); *Reese v. Biddle*, 112 Pa. St. 72 (3 Atl. Rep. 813); *Brazil, etc., Coal Co. v. Cain*, 98 Ind. 282; *Holden v. Fitchburg R. R. Co.*, *supra*.

We find in the record no evidence of negligence imput-able to the respondents, and the judgment appealed from is, therefore, affirmed.

HOYT and STILES, JJ., concur.

SCOTT, J., dissents.

DUNBAR, C. J. (*dissenting*).— I dissent.  In my judg-ment there is no question of fellow servant in this case. The appellant was all the time working under the direction of a superior whose directions it was his primary duty to obey, and on whose judgment he had a right to rely, in the absence, of course, of apparent danger.  Smith, the foreman, who was certainly the *alter ego* of the lumber company, placed him at the disposal of Kelley, and Kelley eventually sent him to work under the direction of the engineer.  He could not presume to direct the engineer, but the engineer *did* presume to, and had undoubted au-thority to direct him, and in obeying such direction or instruction he was injured.  His primary duty was to obey, and in the absence of any apparent danger his abso-lute duty was to obey.  The only question then is, was

the company, through this engineer, guilty of negligence in moving the cars in the way in which they did move them? It was clearly proven that the method adopted of moving the cars with a stick is a dangerous one, but the majority say that the men engaged in moving the car were not compelled to adopt the method provided; but I insist that the appellant was compelled to obey orders or lose his employment, and his orders came from the agent of the company accredited with the authority to exercise his judgment as to the manner of moving the cars. It is true, as the majority say, that it was simply a matter of choice which was the better or safer method to pursue; but the choice was to be made solely by the engineer under whose instructions this appellant was working. It was the engineer who decided upon the method and who selected the material for putting the method into practice, and who directed the appellant to use that particular material.

The case of *Sayward v. Carlson*, 1 Wash. 38 (23 Pac. Rep. 830), is cited as sustaining the theory that appellant should be bound by the action of the engineer as the acts of a fellow servant. In my judgment they are not by any means parallel cases, as there was no question of authority in that case. I did not sit in the case of *Sayward v. Carlson*, but from an examination of it since, I cannot endorse it. For while the general argument is good, the conclusion announced is not, in my judgment, a logical deduction. It will not do to allow the master to escape responsibility by the assertion made in the majority opinion that "there is no evidence showing that the respondent, Hart, gave any direction or authority to the appellant to assist in moving the cars, or that he knew that he would be so employed."

The appellant went from one place to another, each time under the direction of some one who had authority to send him; and under the system which Hart had adopted, and which is necessary for the successful and orderly opera-

tion of a large business with a varied class of employment, he was practically sent to move the cars by Hart, as much as though he had personally directed him to go. The establishment of any other rule would render it practically impossible for the servant, in employment of this kind, to fasten the responsibility of his employment upon the master. In any event, the pertinent fact is, that the appellant was actually there at the time, working under the direction of the engineer; that he accepted his services, and that appellant was injured while performing such services; and, if nothing more, it was an employment at that time. But, saŷs the majority, "the evidence discloses that at the time appellant was injured none of the men there, including the foreman in charge, knew anything about the business of 'staking' cars.'' This announcement, it seems to me, very nearly approaches a confession of judgment. The very fact that the company would place men to work, in a concededly dangerous employment, who had no knowledge of the way in which the work should be done, and consequently could not realize the danger of their employment or guard against it, and that the foreman in charge was equally incompetent and ignorant, conclusively established the grossest kind of negligence. It was the imperative duty of the company to have some one in command of that work who *did* understand it. Had it done so, this accident in all probability would have been averted. There is no showing whatever of any contributory negligence on the part of the appellant, and the judgment, in my opinion, should be reversed, and the jury be allowed to assess the damages.