[No. 9420. Department Two. August 1, 1911.]

JOE DUMAS, *Respondent*, v. WALVILLE LUMBER COMPANY, *Appellant*.[1]

MASTER AND SERVANT—NEGLIGENCE—CAUSE OF ACCIDENT—FALL OF LUMBER—EVIDENCE—SUFFICIENCY. The evidence warrants a finding that the cause of the fall of a pile of lumber was the negligent manner in which it was piled, where there is irreconcilable conflict in the evidence of the two witnesses who saw the pile before the accident, and from the description of one of them the pile was clearly unstable; and in such case it cannot be said that the cause rests in speculation or conjecture.

MASTER AND SERVANT—SAFE PLACE—LUMBER YARD. The duty of a master to furnish a safe place to work applies to working places in a lumber yard where there were piles of lumber impending 12 to 16 feet directly above the working place, and there was but little change in conditions while the men were working before the lumber fell; and such duty is nondelegable.

MASTER AND SERVANT—ASSUMPTION OF RISKS—QUESTION FOR JURY. A laborer in a lumber yard does not, as a matter of law, assume the risks from an unstable pile of lumber, by proceeding, without an inspection, to the place where he was directed to work by the foreman of the yard; whether he acted as a reasonably prudent man being for the jury.

MASTER AND SERVANT—OBEDIENCE TO ORDERS. A direction by a foreman to two men to remove a pile of lumber, one of whom would have to go below, is equivalent to a direct order to the one who did go below.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered October 17, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by an employee in a lumber yard. Affirmed.

*Roberts, Battle, Hulbert & Tennant* and *Dysart & Ellsbury*, for appellant.

*Forney & Ponder*, for respondent.

[1]Reported in 116 Pac. 1091.

ELLIS, J.—The respondent brought this action to recover damages for personal injuries suffered through the falling of a pile of lumber upon him from a dock in appellant's mill yard. From a verdict and judgment in his favor, this appeal was taken.

Appellant's sawmill and lumber yard are so arranged that the lumber is taken from the sorting table on trucks drawn by a horse, and the assorted dimensions placed in piles along the sides of the lumber docks. A space about six feet wide in the middle of the docks is kept clear for a truckway. There are three docks, from 12 to 16 feet high, from 16 to 24 feet wide, and from 350 to over 400 feet in length. The north dock here in question is 18 or 20 feet wide, and at the place of the accident is variously estimated at from 11 to 16 feet in height. No witness had measured it. One Adna Hill was yard foreman, and all the men in the yard and on the docks were under his immediate direction. He had the supervision of the piling of lumber, both in the yard and on the docks. On the ground near to and along the side of the north dock, were timbers 12 inches square, so placed as to form bottoms or bases for permanent stacks of lumber. From time to time as the piles of lumber accumulated along the edge of the dock through the operation of the truckmen, other men working in pairs, also under Hill's direction, would take the lumber from the piles on the dock and stack it on the pile bottoms on the ground below. To do this it was necessary that one man get upon the pile on the edge of the dock and pass the lumber to the other on the ground.

Between two and three weeks prior to the accident, the respondent and one James Woosen, both Lithuanians, who speak little English, were hired by appellant to work in the mill yard. They had known each other many years, and it appears had worked together in various sawmills from time to time for over a year. At the appellant's plant, respondent had no definite line of employment. The foreman, Hill, testified, "he did any work he was directed to do, such as piling

lumber, loading cars, picking up in the yard, or whatever consisted of yard work." Between 4 and 5 o'clock in the afternoon of March 17, 1910, Dumas and Woosen were taken from a distant part of the premises to the place here in question and directed by the foreman, Hill, to remove a pile of 2x4 lumber from the edge of the dock and stack it on the permanent pile bottom on the ground immediately below. Hill took them along the aisle of the dock between the lumber piles to the pile in question, directed them to stack it below, and went away. Neither of the men had ever worked on this part of the dock before. They proceeded in the usual manner, Woosen getting upon the pile, Dumas went below, and Woosen began passing the lumber over the side of the dock to him, and he placing it in position upon the pile bottom. They had been so engaged but a few minutes, only 20 or 24 pieces of timber having been so passed down and placed, when a part of the pile fell from the dock upon Dumas who was stooping over, and inflicted the injuries complained of.

While there is much conflict in the evidence as to the quantity of lumber that fell, it is not disputed that he was covered by it so that it took several men some three minutes to extricate him. Woosen, who jumped from the pile as it started to fall, testified that all but a small part of the bottom of the pile fell. Witnesses for appellant, who claim that they saw the lumber on the ground, estimate the amount at from 50 to 100 pieces. The negligence charged is that the place where respondent was required to work was unsafe in that the pile of lumber on the dock directly above was so negligently constructed, under the direction of the foreman and presumably with his knowledge, as to make its fall imminent on any added weight. The appellant contends that no negligence was proved, and that the verdict was based upon mere conjecture as to what caused the lumber to fall. The defenses of negligence of fellow servants, contributory negligence, and assumption of risk were also interposed.

There is an irreconcilable conflict in the evidence as to the

dimensions of the pile of lumber and manner of its construction. Woosen, who testified through an interpreter, stated that it consisted of two parts, separated by a space of two inches, the section immediately on the edge of the dock being four or five feet high, the other between the first pile and the truckway being six or seven feet high and supported by 2x4 timbers about eight feet apart standing on end against the first section, extending about two feet above it, and leaning outward toward the edge of the dock. The pieces of lumber in the pile were from eight to twenty-four feet long. He estimated the width of the whole pile at about seven feet. It seems plain that such a pile as he describes would be unstable. The smaller part near the dock's edge would sustain a continual outward pressure from the weight of the other and higher part. The foreman, Hill, testified that the pile was about five feet wide at the bottom, a little more than four feet high, and about two feet wide at the top; that the pile was not in two sections with pieces between; that the timbers were from eight to twenty-four feet long; and that this pile was constructed in the way in which lumber was ordinarily piled along the dock. He was the only witness of appellant who had noticed this pile particularly prior to the accident.

The witness Woosen further testified that, just before the lumber fell, two Japanese truckers brought a truck load of lumber and started to place it on the pile, that he stepped from the lower section where he was standing to the higher and told them not to do so, that the pile was high enough, and at that instant the pile fell, both sections starting to slide at the same time. Hill testified that Woosen, a short time after the accident when questioned as to how it happened, told him that the "Japs ran against the pile with their truck." Woosen denied that he ever so stated, and testified that the Japanese did not run against it. He also stated that most of the few pieces he had removed from the pile he took from the lower section.

The appellant's argument, based upon this evidence, is summed up as follows:

"The testimony left the cause of the falling of the lumber a mere matter of speculation and conjecture. Under the facts and circumstances, there are so many things that might have caused the lumber to fall that it was a mere matter of guess as to whether it fell by reason of any negligence of the appellant. It was suggested that the Japanese ran against the pile with their truck or that they pushed the pile over. The most likely cause was the piling of more lumber on the pile by the Japs and the manner and way in which Mr. Woosen, the respondent's partner, took the lumber off the pile and the way he stood on the corner of the pile, causing it to slide off. Appellant would not be liable for any of these causes."

In view of the evidence, it seems to us that counsel has confused the ideas of credibility and conjecture. If we are to hold the rule against speculation and conjecture as applicable to this case, then on a mere suggestion, or slight evidence of conflicting theories, it could be successfully invoked in almost any case. The question here presented is really one of credibility of evidence. There was ample evidence, if Woosen is believed, to show that the lumber fell because it was negligently piled; that the pile was so constructed as to be liable to fall upon the application of slight force or added weight. If the lumber was piled as he said it was, there is no room for conjecture, and little cause for wonder that it fell, whether by reason of the addition of his own weight, or of lumber placed thereon by the Japanese, or from the impact of a passing truck. On the other hand, if the pile was constructed as the foreman said it was, it is evident that none of the suggested causes would be sufficient cause. The authorities cited by appellant are not applicable to the evidence before us. In *Hogg v. Standard Lumber Co.*, 52 Wash. 8, 100 Pac. 156, there was no evidence that the logs were negligently loaded or improperly secured on the sled. No specific negligence was proved. The other cases cited on

13—64 WASH.

this point are even less pertinent. In all of them proof of specific negligence was wholly absent.

It is contended that the rule requiring the. master to furnish a safe place to work does not apply because "the place to work was being changed constantly." It seems to us that piles of lumber impending some 12 to 16 feet directly above the place where men are required to work makes a situation well illustrating the reason and necessity of the rule. Manifestly there could have been but little change in the pile in the short time appellant and Woosen were at work. There is no evidence that either Woosen or the Japanese or any one else had so changed conditions as to make the place unsafe had the lumber been piled as the foreman, Hill, testified was usual. Nor can the defense of injury by negligence of fellow servants apply. The duty to see that the lumber was piled in such a manner as to make the place reasonably safe was a nonassignable duty of the master. The rule announced by this court in the *Zintek* cases is plainly controlling on the evidence here. *Zintek v. Stimson Mill Co.*, 7 Wash. 178, 32 Pac. 997, 33 Pac. 1055; *Zintek v. Stimson Mill Co.*, 9 Wash. 395, 37 Pac. 340; *Illinois Steel Co. v. Schymanowski*, 162 Ill. 447, 44 N. E. 876; *Libby, McNeill & Libby v. Scherman*, 146 Ill. 540, 34 N. E. 801, 37 Am. St. 191; *Hennessy v. Boston*, 161 Mass. 502, 37 N. E. 668.

No evidence was offered to sustain the defense of contributory negligence other than that more properly applicable to the defense of assumption of risk. While it may be fairly said from the evidence that, if respondent had made an inspection before descending from the dock, he could have discovered that the lumber was insecurely piled, still can it be said that, under the circumstances, he assumed the risk, as a matter of law, by not making the inspection? We think not. If, in proceeding without inspection to his place beneath the dock, to which he was ordered by the foreman, he acted as a reasonably prudent man receiving a like order in the same circumstances would have acted, then it cannot be held, as a

matter of law, that he assumed the risk.   It is true, as appellant contends, that the foreman did not specify which of the two men should go below, but he did take them to the lumber pile on the dock and did tell them to stack it on the pile bottom beneath.   He says that this could only be done by one of them getting upon the pile and the other going to the ground below.   This was certainly equivalent to an order to the one who did go, and respondent must be held to have acted upon a direct order from the foreman.   On these facts, the question of assumption of risk was for the jury, under proper instructions.   *Liedke v. Moran Bros. Co.*, 43 Wash. 428, 86 Pac. 646, 117 Am. St. 1058; *De Mase v. Oregon R. & Nav. Co.*, 40 Wash. 108, 82 Pac. 170; *Goldthorpe v. Clark-Nickerson Lum. Co.*, 31 Wash. 467, 71 Pac. 1091; *Dean v. Oregon R. & Nav. Co.*, 38 Wash. 565, 80 Pac. 842; *McGovern v. Central Vermont R. Co.*, 123 N. Y. 280, 25 N. E. 373; *Chesson v. Roper Lum. Co.*, 118 N. C. 59, 23 S. E. 925; *Bunker Hill & S. Min. etc. Co. v. Jones*, 130 Fed 813.

A number of assignments of error are based upon the instructions given by the court.   We have examined the instructions with care, but space will not permit us to review them in detail.   While they are unnecessarily prolix, we believe that, taken as a whole, they fairly presented the law applicable to the evidence adduced.   Some of the instructions are faulty, and standing alone are open to criticism, but when taken in connection with the others we are unable to find that they present ground for reversal.   The judgment is affirmed.

DUNBAR, C. J., CROW, MORRIS, and CHADWICK, JJ., concur.