On the record before us the judgment must be affirmed, and it will be so ordered.

ST. JOHNS & HALIFAX RAILROAD COMPANY, APPELLANT, VS. ANDREW SHALLEY, APPELLEE.

DAMAGE BY FIRE SET BY RAILROAD EMPLOYES—PRACTICE.

1. Where a plea of the general issue is interposed requiring nothing more than a joinder of issue or *similiter* to make the issue complete, and a full and final trial is had upon the merits of the controversy embraced in the declaration and plea, without any notice being taken of the absence of such *similiter*, and without any protest or objection to the trial because of its absence, then its absence is not ground for arrest of judgment or for reversal.

2. Where an independent contractor is employed to accomplish a certain work, and through his or his servants' negligent performance of it damage results to a third person, such contractor, and not his employer, is responsible to the injured party, provided such contractor, in the performance of the work, or in the mode and manner of doing it, is not subject to the direction or control of the employer. But where the employer has the right to direct or control the performance of the work, or the mode and manner of its accomplishment, then he is lia-

ble. Whether this general rule is applicable or not to the operations attendant upon the construction of railroads under legislative grants, not decided.

3. Where common laborers are employed and paid directly by a railroad company for the work of grading its road-bed, such work being taken in sections and paid for by the cubic yard, and such laborers are subject to the direction of the company's chief engineer, or of its foreman in the mode and manner of doing the work, their pay depending upon the work being done according to directions, and they being subject to discharge when the work is delayed or imperfectly done: *Held*, That such laborers are not *independent* contractors, but are the servants of the railroad company employing them, and that such company is liable for the damage resulting to the property of a third person from fire negligently started by such laborers in the performance of the company's work.

4. The object of the statute (§4, p. 858, McClellan's Digest), in requiring a referee, before whom a cause is tried, to give notice to the respective parties of the filing of his findings and judgment in the clerk's office, was to afford the parties an opportunity, within the ten days limited for that purpose, of making motions for arrest of judgment or for new trial. Where the record on appeal shows that a motion for new trial was in fact made before a referee within the time limited for such motions: *Held*, That the presentation of such motion is, of itself, evidence that the party making it did have notice of the filing by the referee of his findings and judgment, and that the absence from the record of any written paper evidencing such notice was thereby supplied.

Appeal from the Circuit Court for Putnam county.

The facts in the case are stated in the opinion of the court.

*Calhoun, Gillis & De Witt* for Appellant.

*King & King* for Appellee.

TAYLOR, J.:

Andrew Shalley, the appellee, sued the appellant railroad company for the recovery of damages for the destruction of his houses, fences, orange trees and other property by fire carelessly allowed to escape upon his premises by laborers engaged in the construction of the defendant's railroad. The cause was referred for trial to a referee, who rendered judgment in favor of the plaintiff for the sum of $1,805, besides the costs taxed at $81.94. From this judgment the appeal is taken.

The errors assigned are as follows: 1st. The referee erred in proceeding with the trial of said cause when the same was not at issue, no replication to the defendant's plea having been filed by the plaintiff. 2nd. That the referee erred in refusing to admit evidence on behalf of the defendant, and in admitting evidence on the part of plaintiff that was inadmissible, and objected to by defendant. 3rd. The referee erred in refusing the defendant's motion for new trial upon the grounds (1) that the judgment was excessive; (2) that the judgment was contrary to the law and the evidence, and was not supported thereby. 4th. That the referee erred in failing to file in the record in the clerk's office of Putnam county any paper showing notice to the defendant of the filing of his findings and judgment in said cause.

As to the first of these assignments, we find that the only plea filed by the defendant was that of the general issue, or "not guilty," and no notice appears from the record to have been taken by either of the parties at the trial of the absence of a *similiter*, but the defendant seems to have voluntarily gone into the trial without it, and without protest or objection because of its absence. Under these circumstances the

mere absence of a *similiter* to a plea of the general is-
sue is not ground for arrest of judgment or for reversal
after a final trial and judgment upon the merits of the
matter embraced in the declaration and plea. Hu-
ling vs. Florida Savings Bank, 19 Fla., 695; Liv-
ingston vs. Anderson, 30 Fla., 117, 11 South. Rep.,
270.

The second error assigned above is entirely too gen-
eral and indefinite to be considered, as it does not
point out or specify what evidence, if any, was offered
for the defendant and rejected by the referee, nor any
that was admitted for the plaintiff over the defendant's
objection. Neither does the appellant in its brief
point out or specify the errors contended for in this re-
spect. Because of the latter fact we treat the second
assignment as having been abandoned.

The third assignment of error presents the real point
in controversy between the parties. Do the facts in
proof, under the law applicable thereto, sustain the
judgment rendered? The plaintiff's declaration al-
leges that the defendant railroad company, a corpora-
tion organized and existing under the laws of Florida,
by its agents and servants acting under the orders, di-
rection and control of the defendant, on the 30th day
of January, 1888, broke and entered the close of the
plaintiff situated in Putnam county, and then and
there by the carelessness and negligence of its said
agents and servants trampled upon and set fire to the
grass and other combustible matter on and in said close,
and burned and destroyed sixty orange trees growing
therein, of the value of ........................ $900
A dwelling house, of the value of.............. 300
A kitchen, of the value of..................... 150
A stable, of the value of...................... 150
Three tons of hay, of the value of............. 60

One ton of fertilizer, of the value of ............ 40
One stove, of the value of..................... 20
One bedstead, of the value of.................. 10
Three pairs of blankets, of the value of......... 15
Lot of pillows and sheets, 20 in number, of the
    value of..................................... 10
Two trunks, of the value of.................... 15
Lot of clothing, of the value of................ 40
One harrow, of the value of.................... 10
Two plows, of the value of..................... 15
600 feet of fencing, of the value of............. 20
of the property of plaintiff, situated and being in and
upon said close. There is some slight conflict in the
evidence as to whether the fire was started by the de-
fendant's laborers engaged in cleaning up its right-of-
way, or by those engaged for the defendant in the
work of grading its road-bed, but we are satisfied that
the preponderance of the evidence establishes the fact
that the origin of the fire was from three stumps in the
defendant's right-of-way adjacent to the premises of
the plaintiff that were set on fire, for the purpose of
getting rid of them, by the laborers employed in the
work of grading. The proof is that it was a very dry
season; that the stumps so set on fire stood very near
to, or within twenty feet of the gate and fence enclos-
ing the plaintiff's premises, in and along which there
was standing a large quantity of dry and inflama-
ble sedge grass and weeds that extended through
and among a grove of bearing orange trees up
to the houses. That the wind was quite high
at the time; and that after the ignition of the grass
and weeds within, outside of and along the plaintiff's
enclosure from the fire in the stumps it soon spread to
and destroyed the buildings and other property as
  26

402 SUPREME COURT.

St. Johns & Halifax R. R. Co. v. Andrew Shalley.—Opinion of Court.

charged. The defendant railroad company endeavors to shift the responsibility for this careless handling of fire about the plaintiff's premises, by which his property was destroyed, upon the laborers engaged in grading its road who started the fire, upon the ground that they did not at the time occupy the relation towards defendant of either servants or agents, but that they were independent contractors engaged in carrying out a contract by which they undertook to do the grading of certain parts or sections of such road entirely independent of any supervision or control in its performance on the part of defendant; and that the relationship between said laborers and the defendant was that of contractor and contractee, and that, therefore the defendant is not liable for the injury done by such contractors through their careless performance of their contract.

The law seems to be well settled not only by our own court, but generally by the American courts, that where a contractor is employed to accomplish a certain work, and through his or his servants' negligent or careless performance of it damage results to a third person, such contractor, and not his employer, is responsible to the injured party, *provided*, such contractor, in the performance of the work, or in the mode and manner of doing it, is not subject to the direction or control of the employer. Where the employer has the right to direct or control the performance of the work, or the mode and manner of its accomplishment, then, in such case, he is liable. Mumby, Stockton & Knight vs. Bowden & Rosenthal, 25 Fla., 454, 6 South. Rep., 453; Wood's Law of Master and Servant, secs. 314, 315, and citations. Whether this general rule is applicable to the operations attendant upon the construction of railways under legisla-

tive grants or not we do not now decide; but we do not think, however, that the proofs in this case sustain the contention of the appellant, that the laborers whose carelessness produced the injury here were independent contractors, and not subject to its direction or control in the performance of its work. The proof shows that these graders were employed directly by the railroad company and were paid by the company at the rate of so much per cubic yard of earth removed, and an agreed price for all stumps removed. The graders were common laborers, and the defendant company seems to have been carrying on the general work of constructing its road within itself, and not, as is often customary, through the instrumentality of an independent contractor for the various branches of its work. Its witness, C. R. Knight, who was its engineer, as he says, "in charge" of the extension of the road to Palatka, undertakes in his evidence to represent these graders as being independent contractors, but he testified that their work was staked out for them by the engineer in sections, and the "yardage" computed, and that then a "foreman" let out the sections to those who applied for the grading of them; and that the next duty of the foreman was to accept or reject the work upon its completion, and in case of doubt as to whether the work was well done, he called on the engineer for the levels necessary to determine the doubt as to whether the grader has "properly and faithfully, and in accordance with his contract, done his work." He testified further that the foreman had the right to take the work away from them when for any cause they neglected to perform it within a reasona ble time, and to re-let any uncompleted portion, paying *pro rata* for the part performed; and that whenever the foreman's attention was called to any specific vio-

lation of the "contract," he had the right to annul the contract or to compel the grader to do the work as he had contracted to do it; and that the foreman pointed out to the grader the "amount and nature" of the work, directing him as to the width and height of the embankment, and where the earth was to be taken from, etc., etc. In other words, what this witness termed the *"stipulations of the contract"* with the graders, were evidently nothing more than *directions* from the foreman and engineer to the graders as to the mode and manner of doing their work, and if it was not done in accordance with those directions, the grader was forced to comply with them, or else be dismissed without pay for the uncompleted or imperfect work. Under these circumstances we think that these graders, instead of being independent contractors in the sense that would relieve the employer company from responsibility for their negligence, are sunk to the level of ordinary laboring servants to the company who was their master, and that the company was properly held to be liable for the damage resulting from their negligence in the performance of the work they were put by the company to perform for its use and benefit.

There is no merit in the contention of the appellant that the amount of the referee's finding was excessive. The proof as to the value of the property destroyed not only sustains the amount of the damage found against the appellant, but was sufficient to have prevented a reversal at our hands upon the ground of excessiveness had the finding been even greater than it is.

The fourth assignment of error, to the effect that no paper was filed by the referree in the clerk's office showing that notice was given to the defendant of the

filing of his findings in the cause, can not avail the appellant under the facts presented by the record. Section 4, p. 858, McClellan's Digest, in force at the time of the filing of the judgment herein by the referee, provided that the referee should give notice to the respective parties, their agents or attorneys, of the filing of his findings and judgment in the clerk's office, and that unless a motion in arrest, or for new trial, or for reformation or alteration of the judgment was made in writing within ten days after the giving of such notice, such judgment stood confirmed as the judgment of the Circuit Court. The purpose of the statute in requiring the referee to give this notice was to afford the parties an opportunity within the ten days limited for that purpose to make the motions for arrest of judgment, for new trial or for reformation, modification, etc. The complaint of the appellant is not that it did not have this notice, but that there is no proper written evidence that he had it. The fact, as disclosed by the record, that its attorneys, within the time allowed therefor by the statute, did make a motion before the referee to set aside the judgment rendered and filed by him, and for a new trial, shows as conclusively that they did have notice of the filing of such judgment as though the evidence of such notice and of its service upon them were before us in the shape of a formal writing to that effect. It will be well to observe that by Paragraph 7 of Section 1231 of the Revised Statutes the referee is now required, as soon as he arrives at a a judgment, to give notice thereof in writing to both parties.

Finding no error in the record the judgment appealed from is affirmed.