W. C. GREEN AND J. J. GREEN, PARTNERS USING THE NAME AND STYLE OF W. C. GREEN COMPANY, PLAINTIFFS IN ERROR, VS. RICHARD A. SANSOM, DEFENDANT IN ERROR.

1. The pleading, the form of which is prescribed by section 33, Chapter 1096, acts 1861 (section 1055, Revised Statutes), is in the nature of a general replication *de injuria*, enabling a party in a compendious manner to traverse all those allegations in a plea which he could have traversed before the enactment of these provisions, but all matters which before the act must have been replied specially must still be so replied.

2. The statutory general replication prescribed by section 33, Chapter 1096, acts 1861 (section 1055, Revised Statutes), is properly pleaded to the plea of not guilty, special pleas denying specific allegations of the declaration, and a plea alleging that plaintiff's

alleged injuries were caused by his own negligence and not otherwise, in actions for damages alleged to have been caused by defendant's negligence.

3. An assignment of error based upon a general exception to several instructions asserting distinct propositions of law, one or more of which is correct, will be overruled.

4. Where the servant of an independent contractor is sent to do a certain piece of work for the employer of such contractor, and from the time such servant sets to work the employer assumes and exercises control over him and the work performed by him, directing and controlling him as to the methods and details by which the desired result is to be accomplished, the relation of master and servant is thereby constituted between the employer and such servant.

5. Where the employer undertakes to furnish his own employes, or those of an independent contractor, some of the implements or instrumentalities for executing the required work, he thereby assumes a duty to exercise ordinary and reasonable care, measured by the surrounding circumstances, to provide such implements and instrumentalities as will be reasonably safe and suitable.

6. A master is not to be held liable as an insurer of the safety of his employes, or as a warrantor of the instrumentalities and implements furnished by him to enable his servants to accomplish his work, but the law obliges him to exercise such ordinary and reasonable care as prudence and the exigencies of the situation require, in providing the servant with safe machinery and suitable instrumentalities for his work, and if this obligation be performed the law absolves him from all liability for defects therein.

7. The servant owes a duty to his master to exercise ordinary care for his own safety, and while he has a right to presume that his master has performed his duty and is not therefore ordinarily bound to discover latent defects in the instrumentalities furnished him, yet he must notice all those patent and obvious defects which the exercise of ordinary care would enable him to discover; otherwise his own negligence will contribute to his injury and prevent his recovery.

8. Where the master requires his servant to select for his use in executing a particular work, a rope from a number of ropes at the servant's command, and the servant in making such selec-

tion, selects one which is apparently sound and sufficient for the intended purpose, but which in fact is defective, and the master knows, or by the exercise of ordinary and reasonable care ought to know, of the defect, he will be liable for the injury to his servant resulting from such defect; but if the servant selects a rope obviously and patently unsound or unsuitable for the desired purpose, he will not be exercising the care required of him, and his master will not be liable.

9. Unless the circumstances attending an accident show that it could not have happened if ordinary care had been used by the master, the happening of an accident does not raise a presumption of negligence on the part of the master in actions between master and servant, in cases other than those provided for by Chapter 4071, acts 1891.

10. In actions by servants against their masters for injuries occasioned by defects in the instrumentalities furnished by the master, to authorize a finding that the master has been negligent, it must be shown that the defect was known to the master prior to the accident, or that in the exercise of ordinary and reasonable care he ought to have known it as that the defect was one which a reasonable and proper test or inspection would have disclosed and that ordinary and reasonable care required such test or inspection to be made.

Writ of error to the Circuit Court for Duval county.

The facts in the case are stated in the opinion of the court.

*Walker & L'Engle and R. H. Liggett*, for Plaintiffs in Error.

*Cromwell Gibbons and J. N. Stripling*, for Defendant in Error.

CARTER, J.:

Defendant in error sued plaintiffs in error in the Circuit Court of Duval county, claiming damages for per-

sonal injuries alleged to have been caused by negligence. The defendants as contractors were constructing a public building for the United States in the city of Jacksonville, and were required by the government superintendent of construction to test the plumbing therein before its acceptance. They employed one J. E. Kuchler to make the test, who sent the plaintiff, one of his employes, to do the work. Defendants claimed that Kuchler was an independent contractor; that they contracted with him to do the work according to his own methods, reserving no authority or control over him, or the execution of the work other than that it was to be satisfactory to the superintendent of construction. There was evidence that plaintiff was sent by Kuchler to do whatever work, and in such manner, as defendant might require; that he was occupied in the work four or five days prior to the injury complained of, during which time he worked under the exclusive supervision and control of one of defendants, performing various duties connected with testing the plumbing, repairing leaks therein according to specific directions given by defendants in accordance with details and methods of doing the work prescribed by them, and that during this entire period Kuchler was at the building only four or five times, remaining from five to ten minutes only, giving no instructions in regard to the work whatever, but merely inquiring how plaintiff was getting along. Plaintiff's injury is alleged to have occurred in consequence of the breaking of a rope used in constructing a hoistaway by which he was elevated into the tower of the building to repair a leak in a water pipe about fifty feet from the floor. There was evidence tending to prove that about the time this leak was discovered, Kuchler and one of the defendants were present, and both said it would have to

7

be repaired.  Kuchler said to plaintiff in Green's presence, "Mr. Green says there are a plenty of ropes here and you can rig up a hoistaway."   When plaintiff was ready to go up in the tower, Mike Howard, an employe of defendants, brought a large rope which plaintiff rigged through a pulley at the top of the tower.   Howard then brought a board with a smaller rope attached. Plaintiff saw that the small rope had been used considerably but could not tell how long.   He took it for granted that the rope was "all right."   He made some remark about it when he began to tie it to the larger one and Howard said, "Oh, that rope is all right."   Plaintiff made the small rope fast to the larger one and was hoisted up to examine the leak, which took him about five minutes, and was then let down.   After dinner plaintiff sent his assistant (employed by Kuchler) overhead with material and plaintiff was again hoisted into the tower by two of defendants' servants.   A bucket of melted lead was lowered by the assistant from the floor above; plaintiff caught the rope above the bucket and was in the act of pouring the lead in the leaking joint, when the smaller rope suspending the hoistaway broke, causing plaintiff to fall several feet, and the melted lead to spill in one of his eyes, and upon his head and face. Plaintiff succeeded in catching the larger rope and was lowered to the floor.   On the morning when plaintiff went to work Kuchler told him where he could get some tools and expansion plugs to work with, but during the progress of the work defendant furnished some wooden plugs and plaster paris for use by plaintiff.   Defendants admitted that when Kuchler first came to work they gave him *carte blanche* to use anything about the building when he might need it.   There were several ropes and hoistaways lying about the building when plaintiff constructed the contrivance used by him, but the size

or character of these ropes, or the condition of the hoist-aways is not shown. The evidence tended to show that the ropes used by plaintiff were apparently sound and sufficient for the uses to which they were put, but that ropes of that character will after being in use awhile turn dark, and after being exposed or used a long time rot; that there is no difference in the appearance of a rotten rope of this character and a sound one that has been used; that the only way to ascertain when a rope of this character that has been in use a long time is sound is to test it; that a test is not always safe because it will frequently weaken without breaking the rope, so that it will afterwards break under a less pressure. Plaintiff did not test the ropes before using them. How long these particular ropes had been in use is not shown, but defendants admitted that the ropes in the building had been in use from six months to two years. The jury rendered a verdict for plaintiff, defendants' motion for a new trial was overruled, and from the judgment entered this writ of error was taken.

The declaration contained two counts. The first alleged that plaintiff was a servant of defendants; that defendants were negligent in furnishing a defective hoist-away. The second alleged that plaintiff was a servant of Kuchler; that the latter was employed by defendants to inspect and test the plumbing in the tower; that plaintiff, at Kuchler's request, went to the building to do whatever work in the line of plumbing that might be required by defendants; that he entered the building at the invitation and by the request of defendants, and was required to inspect and test the plumbing; that it was necessary for plaintiff to be elevated from the ground floor by means of a hoistaway which was furnished and provided by defendants; that the hoistaway, by reason of

defendants' carelessness and negligence, had become unsafe and insufficient to support and maintain plaintiff's weight, and that by reason of the defects in the hoistaway plaintiff was, without any fault or negligence on his part, injured. Defendants pleaded not guilty, upon which issue was joined.

Defendants then filed additional pleas. The first alleged that it was not true, as alleged in the first count, that plaintiff was an employe of defendants, but that plaintiff was a servant of Kuchler as alleged in the second count. The second plea denied certain specific allegations of the declaration, and alleged that Kuchler was an independent contractor; that plaintiff was his servant and went in and upon the building at Kuchler's invitation and worked there under the control and supervision of Kuchler exclusively, and that defendants exercised no control over plaintiff or the work in which he was engaged. The third plea alleged that the injury was caused by the negligence and improper conduct of plaintiff, and not otherwise. Plaintiff replied to these pleas, "The plaintiff joins issue on the first, second and third pleas of the defendants."

I. It is insisted that the second and third pleas alleged new matter requiring a special replication; that the "joinder of issue" filed thereto was a nullity, and consequently that there were no issues based on these pleas to try when the case was submitted to the jury. The defendants went to trial upon these supposed issues, without testing the sufficiency of this general replication by demurrer or motion to strike, and without raising any objections to a trial upon the issues thus supposed to have been joined, and unless it is clear that the replication was a nullity, and that a special replication was absolutely required to these pleas, the defendants should

not be permitted to avail themselves of a defect of this character first sought to be made available after verdict. Soper v. Jones, 56 Md. 503. Section 1055 Revised Statutes provides that "either party may plead in answer to the plea * * * of his adversary, that he joins issue thereon, which joinder of issue may be as follows, or to the like effect: 'The plaintiff joins issue upon the defendant's first plea' * * * and such form of joinder of issue shall be deemed to be a denial of the substance of the plea, * * * and an issue thereon." It was said by POLLOCK, C. B., in Glover v. Dixon, 9 Exchequer (Welsby, H. & G.) 158, that the form prescribed by this section (which was taken from the English Common Law Procedure Act) is in the nature of a general replication *de injuria*, enabling a party in a compendious manner to traverse all those allegations in a plea which he could have traversed before the enactment of these provisions, but that all matters which before the act must have been replied specially must still be so replied. It is not perceived that either of the pleas filed by defendant required a special replication. Even if the second and third pleas were not in substance repetitions of the plea of not guilty, they were in substance denials of specific allegations in the declaration, and the third plea alleged facts which, if true, showed that plaintiff never had a right of action, because the injuries were caused by his own negligence, and not otherwise. To each of these pleas the statutory general replication was proper.

II. At plaintiff's request the court gave nine separate instructions, several asserting distinct propositions, some of which were correct. The exception to these instructions was general, and as some of them were correct, the assignment of error based upon this exception must fail.

III. The other assignments of error question the sufficiency of the evidence to sustain the verdict. It is insisted: (A) That the relation of master and servant was not proven to exist between plaintiff and defendants at the time of the accident; that the former was a servant of Kuchler, an independent contractor, to whom the defendants owed no duty. But we are of opinion that there was evidence sufficient, if believed by the jury, to show that from the time plaintiff set to work the defendants assumed and exercised control and direction over him, and the work performed by him, directing and controlling him as to the methods and details by which the desired result was to be accomplished. This was sufficient to constitute the relation of master and servant between them. Mumby, Stockton & Knight v. Bowden & Rosenthal, 25 Fla. 454, 6 South. Rep. 453; St. Johns & Halifax R. R. Co. v. Shalley, 33 Fla. 397, 14 South. Rep. 890; Ardesco Oil Co. v. Gilson, 63 Pa. St. 146; Kimball v. Cushman, 103 Mass. 194, S. C. 4 Am. Rep. 528. Even if Kuchler was an independent contractor and plaintiff was his servant, the defendants had assumed certain duties toward them which would give plaintiff a right of action for negligence in the discharge of those duties. Plaintiff was doing work on defendants' premises in which they were directly interested. They had told Kuchler that he might use anything about the building when he needed it. If plaintiff's evidence is true, one of the defendants was present when Kuchler told him, "Mr. Green says there are a plenty of ropes here, and you can rig up a hoistaway." From this it is evident that defendants knew the dangerous purpose for which a hoistaway was needed; that they gave permission to select from their appliances such ropes as might be needed; or, in other words, undertook to furnish the ropes to be used

for this specific purpose, leaving the selection to be made by plaintiff. Where the employer undertakes to furnish his own employe, or those of an independent contractor, some of the implements or instrumentalities for executing the required work, he thereby assumes a duty to exercise ordinary and reasonable care, measured by the surrounding circumstances, to provide such instrumentalities as will be reasonably safe and suitable. Consolidated Coal Co. v. Scheiber, 167 Ill. 539, 47 N. E. Rep. 1052; Roddy v. Missouri Pacific Ry. Co., 104 Mo. 234, 15 S. W. Rep. 1112; Mulchey v. Methodist Religious Society, 125 Mass. 487; Coughlin v. The Rheola, 19 Fed. Rep. 926; McKenna v. The Carolina, 30 Fed. Rep. 199.

(B) That the evidence was insufficient to show that the breaking of the rope was due to defendants' negligence. A master does not insure the safety of his employes; he does not warrant the instrumentalities furnished by him to enable his servants to accomplish his work. The extent of the master's obligation is to exercise such ordinary and reasonable care as prudence and the exigencies of the situation require, in providing the servant with safe machinery and suitable instrumentalities for his work. If this obligation be performed, the master is absolved from all liability for defects in such machinery and instrumentalities. On the other hand, the servant owes a duty to his master to exercise ordinary care for his own safety. While he has a right to presume that the master has performed his duty, and is not therefore ordinarily bound to discover latent defects in the instrumentalities furnished him, yet he must notice all those patent and obvious defects which the exercise of ordinary care would enable him to discover, for otherwise, his own negligence will contribute to his injury and thereby prevent recovery. South Florida Railroad Co. v. Weese, 32 Fla. 212, 13 South. Rep. 436.

In this case defendants did not furnish plaintiff with a particular rope, but required him to select a suitable one from a number scattered about the building. In making the selection under these circumstances, plaintiff was required to exercise ordinary and reasonable care, and if he selected a rope obviously and patently unsound or unsuitable for the desired purpose, he would not be exercising the care required of him, and the fault would be his own, for which the master would not be liable. He was not required to search for latent or hidden defects, nor to test the rope for that purpose, because if ordinary care required the ropes to be tested he had a right to presume that his master had done that. The servant seldom has the time or instrumentalities for testing or searching for hidden defects, while the master has, or ought to have, whenever ordinary and reasonable care requires it. If the rope selected by plaintiff was apparently sound and sufficient for the intended purpose, but in fact was defective, and the defendants knew, or by the exercise of ordinary and reasonable care ought to have known, of the defect, they would be liable for injuries resulting therefrom, but not otherwise. The basis of plaintiff's recovery must be defendants' negligence; not simply that an accident has happened without plaintiff's fault. There are cases where the circumstances attending the accident show that it could not have happened if ordinary care had been used (Barnowsky v. Helson, 89 Mich. 523, 50 N. W. Rep. 989; Bahr v. Lombard, Ayres & Co., 53 N. J. L. 233, 21 Atl. Rep. 190), but this case is not one of those. In actions against carriers by passengers in certain cases, proof of the happening of the accident raises a presumption of negligence, and a similar rule prevails by statute in this State in certain cases of negligence against railroad companies  .

(Chapter 4071, acts 1891), but this statute does not apply to *employes* of other than railroad companies, and the common law does not authorize such a presumption in actions by employes against their masters. In order to authorize a finding that an employer has been negligent, there must be evidence of some fact from which negligence can be legitimately inferred, other than the mere breaking of an instrumentality furnished by the employer. It must be shown that the defect which caused the break was known to the master prior to the accident, or that in the exercise of ordinary and reasonable care he ought to have known it; as that the break was occasioned by a defect which a seasonable and proper inspection would have disclosed, and that ordinary and reasonable care required an inspection to be made. Sack v. Dolese, 137 Ill. 129, 27 N. E. Rep. 62; Mensch v. Pennsylvania Railroad Co., 150 Pa. St. 598, 25 Atl. Rep. 31; Kincaid v. Oregon Short Line Ry. Co., 22 Oregon, 35, 29 Pac. Rep. 3, S. C. 53 Am. & Eng. R. R. Cas. 218; Davis v. Columbia and Greenville R. R. Co., 21 S. C. 93; Peirce v. Kile, 80 Fed. Rep. 865, 26 C. C. A. 201. A review of the evidence in this case in connection with these principles of law will show that there was no evidence of any negligence on the part of the defendants, beyond the fact that one of the instrumentalities furnished by them broke. The ropes selected by plaintiff were apparently sound and adequate for the desired purposes. They had borne plaintiff safely while he made an examination of the leaking pipe, without exhibiting any signs of weakening or exciting any apprehensions as to their sufficiency. It was after the second ascent by means of this hoistaway that the rope broke. The small rope broke a few feet above the board upon which plaintiff was sitting, but there is no evidence that the rope

was worn, or rotten, or exhibited any latent defect at the place where it broke, or elsewhere. The size, material and apparent· capacity are not shown other than that the rope was apparently sufficient for the desired purpose. The only evidence as to the appearance of the rope after it broke was that one of the defendants who says he examined it, and that it appeared to have been partly burned and partly broken, but whether this burn was an old, or a fresh one, or whether it was caused by the melted lead, and if so, whether before or after the break, is not shown; nor was it shown that the melted lead did not burn the rope and cause it to break. In fact there is nothing whatever in the evidence to suggest that the rope parted because of any latent defect therein, or to suggest that the "hoistaway on account of the defects thereof caused by defendants' negligence broke and gave way," as alleged in plaintiff's declaration. There was no evidence to show that defendants had not regularly tested and inspected the rope, or that it broke because of any defect that could have been discovered by an inspection and test. It is true that Mike Howard, one of defendants' servants, testified·that "no one made any test of the rope, that I know of, to see whether or not it was sound," but this remark appears to have been intended by the witness to apply to the time that plaintiff ·selected the rope for use. What position Howard occupied, what, if any, opportunities he had for knowing whether the rope had ever been inspected, whether he had ever been employed by defendants before the day of the accident, does not appear. His remark that the rope had not been tested, "that I know of," under these circumstances can not be construed as affirmative proof that the defendants had not properly tested the rope. It was not shown that defendants did not have in the

McCallum & Son v. Culpepper & Dupont.—Syllabus.

building a suitable supply of sufficient and safe ropes from which plaintiff was permitted to select, or that the ones selected by plaintiff were the best in the building. Under these circumstances the verdict of the jury was without evidence to support it, and the court below erred in refusing the motion for a new trial on that ground. Adasken v. Gilbert, 165 Mass. 443, 43 N. E. Rep. 199; McKay v. Hand, 168 Mass. 270, 47 N. E. Rep. 104; Rawley v. Colliau, 90 Mich. 31, 51 N. W. Rep. 350; Hefferen v. Northern Pacific R. R. Co., 45 Minn. 471, 48 N. W. Rep. 1.

The judgment of the court below is reversed and a new trial granted.