FLORALA SAW MILL COMPANY, *Plaintiff in Error,* v. AARON SMITH, *Defendant in Error.*

1. The propriety or impropriety of an instruction, or part of an instruction is determined by a consideration of all the instructions and charges given by the trial court, in connection with the questioned instruction and the proven facts.

2. The giving of abstract instructions should be avoided when it is possible to do so, because they are sometimes misleading, but to be a ground for reversal it must affirmatively appear that they were misleading.

3. In view of the fact that there was evidence tending to support the issues presented by the plaintiff, the defendant was not entitled to an affirmative instruction.

4. Whether or not a witness has such special knowledge as to qualify him to testify as an expert, is to be determined by the

trial judge exercising a reasonable discretion, and his action will not be disturbed unless it affirmatively appears from the record that he erred. The exact amount of special knowledge such a witness must have cannot be expressed in the terms of an abstract proposition of law.

5. The general principles of law applicable to the main facts of the instant case are set forth in Camp v. Hall, 39 Fla. 535, 22 South. Rep. 792 (3rd, 4th, 5th and 6th head notes); Green v. Sansom, 41 Fla. 94, 25 South. Rep. 332; Jacksonville Electric Co. v. Sloan, 52 Florida, 257. 42. South. Rep. 516.

This case was decided by Division B.

Writ of Error to the Circuit Court for Walton County.

The facts in the case are stated in the opinion of the court.

*Blount & Blount & Carter* and *Daniel Campbell & Son,* for plaintiff in error;

*Maxwell & Reeves,* for defendant in error.

HOCKER, J.—This is a suit for personal injuries brought by the defendant in error, hereinafter called the plaintiff, against the plaintiff in error, a corporation, hereinafter called the defendant, in the circuit court of Walton county. The third amended count of the declaration is as follows:

"The plaintiff further sues the defendant for that the defendant on to-wit, the ———— day of August, A. D. 1905, was operating a certain steam saw mill in said county and state and plaintiff who was on said date a minor under the age of twenty-one years was employed by the defendant as a laborer in said mill subject to the orders of the foreman thereof; that in the said mill

and as a part of the machinery thereof were two circular saws known as cut-off saws attached to and operated by swinging frames suspended from overhead shafts; that the said saws ran in slots or grooves cut in and crosswise a table or platform beneath said frame upon which table or platform would rest the material to be cut by said saws; that the frame to which one of said saws was attached was so constructed and equipped with weights and appliances as promptly to throw said saw thereto attached upon being released after use back into the slot or groove which it was designed to occupy and there to hold the same firmly and steadily when not in actual use; that the frame to which the other one of said saws was attached was so negligently and defectively constructed as to allow the said saw irregularly to swing back and forth when said machinery was in motion from the position which it was designed to occupy in said slot or groove and in such a manner as to be a most dangerous menace to the life and limb of those who might be employed at or near it, yet the defendant negligently failed to provide the said frame and saw with any equipment or appliance to prevent the said saw from swinging irregularly from its position when not in use and continued to operate said saw and caused same to be operated in its said defective, unsafe and dangerous condition and was so operating it at the time of the injury of the plaintiff hereinafter alleged; that at the time of said injury the plaintiff was without any experience whatever in the operation of any of said machinery or any machinery similar thereto, save and except an experience acquired during the three days next preceding the time of said injury during which time he was employed at the saw which had weights attached to the frame thereof and which ran steadily in its position, but that the plaintiff had had no experience about the other one of said saws and had no knowledge or warning of its defective,

29

unsafe and dangerous condition or that it would swing back and forth from its position in the manner aforesaid, all of which was known to the defendant; yet the defendant disregarding its duty in this behalf through its foreman and without any warning whatever to the plaintiff of 'the defective, unsafe and dangerous condition of said saw directed and required the plaintiff to leave his work at the said saw which had the weights attached to the frame thereof and which ran steadily in the position which it was designed to occupy, and to keep up the same duties at the defective, unsafe and dangerous saw which irregularly swung back and forth from its position in the manner aforesaid; that on said date the plaintiff while so without warning, experience or knowledge as aforesaid and while in the discharge of his duties under the direction of said foreman in said mill went to work at and near the said defective, unsafe and dangerous saw which was without any appliances to hold same in position as aforesaid and while so engaged and while placing the first piece of material upon the said platform or table for the purpose of cutting same by means of said saw the said saw suddenly and unexpectedly swung from the position in said slot or groove which it was designed to occupy and was thereby brought in contact with the plaintiff's left hand and then and there and thereby severed from the plaintiff's left hand several fingers and otherwise wounded, maimed and injured it, all of which was done during the first minute of the plaintiff's employment at the said defective, unsafe and dangerous saw; that by reason of the said injury so occasioned the plaintiff has suffered great pain of body and of mind and has been put to great expense for medical care and treatment and has suffered great inconvenience and annoyance and much loss of time and profit by reason of said injury and has thereby been permanently disabled and disfigured and has been greatly in-

capacitated for labor and his earning power has been permanently impaired to the damage of the plaintiff in the sum of ten thousand ($10,000.00) dollars. Wherefore plaintiff sues and claims ten thousand ($10,000.00) dollars."

The second amended count is very similar to the third, except that it is somewhat fuller in its statements as to the negligent and defective arrangement of the saw, by which the plaintiff was injured.

The first amended count is also very similar to the third, except that it alleges that the machinery was defective in that the planing machine was liable to clog and to thus throw the power upon the saws causing an accelerated motion and vibration.

The first amended count was demurred to, and the demurrer was overruled. The pleas of not guilty and of contributory negligence of the plaintiff were filed by the defendant, issue was joined thereon and the case submitted to the jury on the issues presented. There was a trial, which resulted in a verdict and judgment in favor of the plaintiff for $1,000, from which judgment a writ of error was taken.

The plaintiff's testimony shows that on the 30th of August, 1905, he was working for the defendant at its saw mill and had the fingers of his left hand cut off by a trimming saw which he had been directed to operate. He had been working about the saw mill of the defendant as fireman for about eighteen months; was hired by the foreman, who it appears had full authority over all the hired men. He was hired to work at a trimming or cut-off saw on the south side of the mill. He had been working at this saw for three days, when the foreman hurriedly told him to go to work at another trimming saw thirty or forty feet from the one he first worked at. These trimming saws were attached to swinging frames and operated upon a table upon which planks

were laid and cut into short lengths by a person standing at the table, who handled the plank to be cut, and pulled the saw forward against the plank in cutting it. The saws worked in slits in the planks of the tables. The plaintiff's evidence tends to prove that he had had no experience in working these saws until three days before he· was injured. He was a minor about twenty years old. The first saw he worked at was arranged with a weight attached to the heavy iron frame overhead, which was designed and had the effect to hold the saw steady when the party using it turned it loose, when it went back to the center of the table by force of its gravity; or even further back than the center. The mechanism was so arranged that the saw was held steadily at the desired place in the table. It appears from the evidence that the iron frames in which these saws were suspended and worked weighed about 200 pounds, and when they came from the factory they had these weights attached to the frames, and it seems, therefore, they were designed· to work with these weights. When the plaintiff was directed by the ·foreman to leave the first saw and go to work at the second saw he was not informed by the foreman that the last saw was arranged differently from the first one, that the weight had been taken off, and that it was a dangerous machine; and being inexperienced he says he did not observe it. The evidence tends to shows that the last saw, being without the weight, would vibrate or oscillate in the slit in the table on which it worked, when it had been pulled forward for cutting a plank, and was turned loose, the witnesses varying in the extent of the oscillation from six to one inch. There was some testimony going to show also that the oscillation would be affected by certain conditions of the power which was applied, but upon this point there was a conflict in the evidence. When the plaintiff went to work at the second saw he cut off one plank and turned the

saw loose expecting it to swing back to its place and remain there. He reached his left hand in the direction of the plank to pull it forward in front of the saw, thus placing it, he says, about four inches in front of the saw, when the saw suddenly came forward and cut off the fingers of his left hand. The plaintiff says he had to operate the saw with his right hand and pull the board with his left as it was more convenient to do so. These saws make about 2,000 revolutions a minute. There is some testimony showing that the plaintiff had been about the mill a good deal, but no dispute that he was practically inexperienced in the use of the saw which cut off his fingers, nor that he was directed by the foreman to work at that saw, nor that the foreman had full and complete authority over those who worked in the mill. The foreman admits he directed the plaintiff to work at this saw and does not testify that he instructed him as to its dangerous character, or cautioned him in using it or that it was arranged differently from the one at which he had been working. The jury were taken to view the mill and these saws. It seems from the defendant's testimony that the weight was taken off the frame which held the saw after it came from the factory, in order to use the saw on both sides of the table, but there is no proof that this did not render the saw a much more dangerous piece of machinery, and it seems to be perfectly obvious that would be the effect. There was some conflict in the testimony on these propositions, but we think there was evidence to sustain them if the jury believed it.

The first assignment questions the correctness of the first special instruction given at request of the plaintiff. The language used in this instruction is as follows, to-wit: "Negligence is imputable to the master whenever the instrumentality is of such a character or his business carried on in such a manner as to subject his

servants to dangers which are unnecessary and needless."

The contention here is, first, that there is no evidence to warrant the charge, and second, that it is in conflict with the fellow servant doctrine. We think there was evidence to warrant the charge and that under the circumstances of this case it does not conflict with the fellow servant doctrine. It was within the scope of the authority of the foreman to direct the plaintiff to work at the saw by which he was injured. Camp v. Hall, 39 Fla. 535, 22 South. Rep. 792.

The second assignment questions the second instruction given at the request of the plaintiff. It is as follows: "In an action by an employe against his employer for injuries caused by the alleged negligence of the latter in failing to furnish him safe machinery with which to work, it is not essential to a recovery, that the employe should be able to show the precise nature of the defect, if it is made to appear that the accident occurred by reason of some defective condition of the machinery, chargeable to the negligence of the employer." The objection to this instruction is that it authorized the jury to find for the plaintiff upon some possible or conjectural defect in the machinery. Authorities are cited to support this contention. The instruction, quite broad in its scope, seems to be taken literally from 2 Labatt on Master and Servant, p. 2297, and Labatt takes it literally from Blake v. Hogan, 57 Minn. 45, 58. N. W. Rep. 867. See also Mooney v. Connecticut River Lumber Co., 154 Mass. 407, 28. N. E. Rep. 352. It is undoubtedly true that the evidence should show with some degree of probability that the negligence alleged was the cause of the injury and that the jury should not be left to mere conjecture as to its cause. 26 Cyc. 1442. In the instant case the undisputed cause of the injury was the sudden forward movement of the saw, which the plain-

tiff says was unexpected by him.   Whether the removal
of the weight from the saw left it in a defective condi-
tion as a safe instrumentality, and the injury was caused
thereby, or whether this forward movement of the saw
having no weight to regulate it, was caused by a sudden
increase of power due to the clogging of other portions
of the machinery, were questions presented by the evi-
dence to the jury for their determination.   In view of
the evidence we understand the instruction to mean no
more than this.   As there was testimony upon both these
questions there was no occasion for the jury to resort to
conjecture, or speculation as to the cause of the injury.
The defendant offered no proof as to the cause of the
sudden forward movement of the saw, but contented
itself with an effort to show that no such sudden move-
ment as was testified to by the plaintiff did or could
occur, and that the plaintiff was familiar with the work-
ing of the saw, or had opportunities to be.   In view of
the circumstances we find no reversible error in the
instruction.   Griffin v. Boston & A. R. Co., 148 Mass.
143, 19 N. E. Rep. 166; Blanton v. Dold, 109 Mo. 64,
text 75, 18 S. W. Rep. 1149.

The third assignment is based on the giving of in-
struction No. 3.   It is as follows: "A master is bound
to furnish such appliances as are reasonably safe and
suitable, such as a prudent man would furnish if he him-
self were exposed to the dangers that would result from
unsuitable or unsafe appliances.   In order to discharge
this obligation he must see that the instrumentalities
which he furnishes are in proper condition, that is to say,
in a condition that would not endanger the safety of
employes, or in such condition that the employe can
perform all the duties required of him with reasonable
safety."   It is contended that this instruction is erron-
eous in that it practically made the defendant an insurer
of its appliances.   This instruction is taken almost lit-

erally, says the defendant's brief, from Labatt on Master and Servant, p. 45. The objection is directed to the portion of the instruction as follows: "In order to discharge this obligation he must see that the instrumentalities which he furnishes are in proper condition, that is to say, in a condition which shall not endanger the safety of his employes," etc.

It is not always safe to copy instructions from a text book and the authority cited by Labatt in support of the language objected to, hardly goes as far as the text. But we think that when this instruction is considered as a whole, and in connection with other instructions, especially instructions numbered 2 and 4, given at the request of defendant, no reversible error is shown. No. 2 was as follows: "If you find from the evidence in this case that the saw by which the plaintiff was injured was reasonably safe, if carefully used, you will find for the defendant." Number 4 was as follows: "Neither the defendant nor its agents warranted the safety of the machinery of the mill, or the appliances by which the plaintiff was injured. The defendant was simply required to use ordinary care to see that the machinery and these appliances were safe, both in their construction and in the manner in which they were used."

The next assignment which is argued here is the twelfth, and purports to be based on the 12th special instruction given on behalf of the plaintiff. The brief of the defendant, however, under this assignment does not discuss special instruction No. 12, but discusses special instruction No. 14. It is as follows: "The servant has a right to presume, when directed to work in a particular place or about machinery, that the master has performed his duty and to proceed with his work in reliance upon this assumption, unless a reasonably prudent and intelligent man in the performance of such work and with no more experience that (than) the

plaintiff would have learned facts from which he would have apprehended danger to himself. Therefore, in determining whether the plaintiff exercises ordinary care in the discharge of his duty, you should consider with the other facts the exigency of his duty as a faithful employe and the confidence which he might in the absence of knowledge and notice to the contrary fairly entertain, that the defendant had provided reasonably safe machinery with which the plaintiff was to work, and that the master would not direct him without warning to subject himself to abnormal or hidden risks." It is objected that while this instruction is probably correct as an abstract proposition of law, by using the word plaintiff in its connections it invaded the province of the jury in assuming the plaintiff was without knowledge that the defendant had not provided safe machinery, and that the master had directed him without warning to subject himself to unnecessary risk. We do not approve of the language of this instruction. In some cases it might be very damaging to the defendant. But in this case the evidence is practically uncontradicted that the plaintiff was without knowledge of the working of the saw which injured him; that to an inexperienced person it was a dangerous instrumentality, and that he was directed to work with it, without instructions as to its dangers. It is contended he should have noticed that the saw had no weight on it to regulate and control its action, and that he did not do so is contributory negligence. But the mere fact that he had worked with a saw for three days regulated and controlled by a weight attached overhead, does not show he should have known what the peculiar action of this saw would be without a weight. This he could only know by observation, experience or instruction, and it is not shown that he had either. Moreover, the instructions given by the court of its own motion, were very favorable to the defendant,

and cover more than two pages of the transcript. The instructions/ for the plaintiff were twenty-five in number and cover nine pages of the transcript. The instructions for the defendant were fourteen in number and cover three pages of the transcript. Several of the instructions given at the request of the defendant were more favorable to it, than the evidence, in our opinion, warranted. For instance, the second of those instructions is: "If you find from the evidence in this case that the saw by which the plaintiff was injured was reasonably safe, if carefully used, you will find for the defendant." The same thing might be said of dynamite or strychnine, but neither is safe in the hands of an inexperienced person. This as well as other of the instructions given at the request of the defendant, it seems to us, overlooked the evidence in the case. We can discover no evidence in the record to uphold the theory that the plaintiff was experienced, or instructed in the use of the different kinds of saws— in use in this and other mills; and that the saw which injured him was a dangerous implement is shown by the facts in this case.

The fifteenth assignment discusses the seventeenth special instruction for the plaintiff. It is as follows: "Employers are bound to see that their employes have reasonable notice of any hidden danger, known to the employer, of which the employe may without fault upon his part be ignorant." The only objection urged here is that the instruction was without foundation in the evidence and calculated to convey to the jury the idea that there was a hidden danger and that it was known to the defendant. The instruction, like most of the others given at the request of the plaintiff was an abstract one. The policy of giving abstract instructions should be avoided whenever it is possible to do so, because they are likely to be misleading. But to be a ground for reversal it must appear that they were misleading.

Hughes on Instructions to Juries, § 48. But as we have said before, in view of the instructions given at the instance and for the benefit of the defendant, we are not prepared to say that in this case the instruction under consideration was misleading.

The sixteenth, seventeenth and eighteenth assignments question instructions given at the plaintiff's request. What we have said of the foregoing will apply to these. They are abstract and objectionable for that reason, but we are not able to say affirmatively that they misled the jury. In addition we will say that the defendant in its briefs overlook the admitted facts which make the action of Mr. Toole, the foreman, in directing the plaintiff to work at the saw which injured him, the action of the defendant itself, under the principle announced in Camp v. Hall, 39 Fla. 535, 22 South. Rep. 792. He appears to have complete authority over the men who worked in the mill.

The twenty-fifth assignment is based on the refusal of the court to give an affirmative instruction for the defendant. After carefully considering the testimony we are of opinion that the trial judge did not err in refusing this instruction. Whether the saw was defective and dangerous because it had no weight to it, whether the plaintiff was experienced or instructed in the use of the saw, and whether he was guilty of contributory negligence, were all questions for the jury under the pleadings and evidence.

The twenty-seventh assignment of error is based on the action of the trial judge in permitting the plaintiff to ask witness J. F. Dunn the following question: "State whether or not from your experience, a cut-off saw fastened to a swinging frame is not more dangerous without a weight than with a weight." The objections are that the witness had not qualified himself to testify, and that he was merely giving his opinion on a question

to the jury were called upon to decide. The record shows that the only ground of objection at the trial was that the witness was not qualified. Before answering the question the witness had stated that he had been a saw filer for fifteen years; that he had never operated one of these swinging saws, except to "keep it up," and had been foreman around a mill. He also said he had a good deal of experience with machinery, "had seen the weighted frames for cut-off saws in the mills, and that it is usual to have weights to the frames; that the weight is supposed to hold it in perfect condition, or hold it steady, to keep it from swinging; that if the weight is off and the machinery is running, it would cause more swinging, more vibration. It is loosely hung on the shaft and swings easily." Under these circumstances we are not able to say that the witness did not have the the requisite skill and experience to answer the question. Atlantic Coast Line R. R. Co. v. Crosby, 53 Fla. 400, text 439, 43 South. Rep. 318.

The thirty-first assignment is based on refusal of the court to permit the defendant to ask its witness, J. A. Cummings, the following question: "Now was there any oscillation of that frame?" He had testified that he had been superintendent of defendant's saw mill since February 1st, 1905. He afterwards said 1907, in reply to the court. He had testified as an expert and that the saws,—swinging saws, were of standard make. He had testified that he had never noticed in the mill any oscillation by reason of the running of the machinery since he had been there. Then followed the question which we are considering. When objection was made to the question the defendant stated it would show by another witness "that there had been no change in the operation." There was no offer to prove that the condition of the saw by which the plaintiff was injured was the same as it was in August, 1905, when the injury occurred. We

do not think it affirmatively appears that the court erred.

The thirty-fourth assignment is based on the ground that the court erred in refusing to grant a new trial. The only grounds presented here are that the verdict was contrary to law. We have examined the evidence carefully and we think it supports the verdict. Neither do we think it is contrary to law. The general principles of law applicable to the main facts of this case can be found in Camp v. Hall, *supra;* Jacksonville Electric Co. v. Sloan, 52 Fla. 257, 42 South. Rep. 516, and Green v. Sansom, 41 Fla. 94, 25 South. Rep. 332. It is unnecessary to reiterate them here.

The thirty-fifth and last assignment questions the ruling of the court upon the demurrer to the declaration. There are three amended counts to the declaration. The first was filed May 2nd, 1906, to which defendant filed a demurrer on May 5th, 1906. This demurrer was overruled on the 17th of September, 1906. On February 9th, 1907, the plaintiff filed two additional counts, the second of which is set out in this opinion. No demurrer was filed to either of these counts, but pleas were filed to all the counts; issue joined and a trial had thereon. The defendant thereby admitted the sufficiency of the second and third amended counts, and we are not prepared to say they show no cause of action. We think the evidence substantially sustains the third count, and it therefore becomes unnecessary for us to discuss the demurrer to the first count. Jacksonville, T. &. K. W. Ry. Co. v. Griffin, 33 Fla. 602, text 605, 15 South. Rep. 336.

The judgment of the circuit court is affirmed.

TAYLOR and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., COCKRELL and WHITFIELD, JJ., concur in the opinion.