J. B. FITZSIMMONS, *Plaintiff in Error,* v. A. J. CESERY & COMPANY, A CORPORATION, *Defendant in Error.*

1. An employer is liable in compensatory damages for injuries to employees caused by the negligent performance or non-performance of any duty to the employees devolving upon the employer by virtue of the express or implied requirements of the employment, whether such duty is negligently performed or omitted by the employer or by one acting in the place and sted of the employer.

2. The particular duties imposed upon an employer with reference to his employees may depend to some extent at least upon the circumstances of the employment and of the service.

3. An employer assumes the duty towards his employees of exercising reasonable care and diligence to provide the employee with a reasonably safe place at which to work, and when the employer has properly discharged this and all other duties to the employee, then at common law, the servant assumes all the risks and hazards incident to or attendant upon the rendering the service that are obvious or reasonably should have been known and appreciated by the employee before the injury and that do not involve negligence of the employer.

4. Under the common law, a plaintiff cannot recover damages for injury to himself caused by the negligence of another if he has in any appreciable way contributed to the proximate cause of the injury.

5. A demurrer to the evidence properly submitted should be overruled when upon the evidentary facts stated therein and the inferences fairly to be drawn therefrom a finding for the plaintiff may be lawfully predicated, the weight and credibility of the evidence being for the jury to determine.

This case was decided by Division A.

Writ of error to the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the court.

*W. C. Vaughn,* for Plaintiff in Error;

*Jno. E. & Julian Hartridge,* for Defendant in Error.

WHITFIELD, C. J.—It appears that J. B. Fitzsimmons was employed by A. J. Cesery & Company, a corporation, and directed to work upon a scaffold from which he fell and received the injuries for which this action is brought. It is alleged that "defendant carelessly and negligently failed to provide a safe place for plaintiff to stand while

performing said work, and by reason of said failure, while the plaintiff was so employed as aforesaid, and doing said work in obedience to said instructions of defendant, said scaffolding broke and gave way, and thereby the plaintiff was thrown to the ground" and injured. There was a plea of not guilty and also pleas tending to set up contributory negligence and perhaps of assumed risk. The form or the sufficiency of the pleas was not tested by motion or demurrer. The defendant demurred to the evidence as follows:

"Now comes the defendant by John E., and Julian Hartridge its attorneys and demurs to the evidence herein and says that the same is not with all of its inferences and legal intendments sufficient to fix the liability upon the defendant, and admits on the record here the facts as follows with all the legal inferences, deductions and intendments authorized in law to be drawn therefrom, to-wit:

J. B. Fitzsimmons, is plaintiff, that he was employed by the defendant at the Aragon Hotel, and sent from there by defendant, on November 4th, 1909, to work at the pumping station at the foot of Newnan street, Jacksonville, Duval county, Florida, that his first work for defendant was to go on a scaffolding on the east side of the building and put on metal laths, he got the cornice in condition for the cement and came down to get cement. When he came down, the south end of the scaffolding was about ten inches lower than the north end. He spoke to Walter Williams who was employed by the A. J. Cesery & Company, and was foreman, and working on the east side of the building. Williams asked him if the scaffolding was too low at the south end. He said it was. Williams then directed a man to fix that end. Fitzsimmons waited, talked to Williams on the west side of the build-

ing for about twenty minutes until the cement was ready and then went around to the east side and went up the step-ladder and stepped on the scaffolding; as soon as he stepped on it, he fell to the ground, striking on his shoulder.

He had worked on the scaffolding about two hours before he came down for the cement; when he went back on it, the south end had been raised, it seemed to him by putting a block on the step-ladder under the board. He saw the block as he fell but not before. After the fall, Williams picked him up, and said to a man there 'What the hell do you mean by putting up a death trap like that?' this was said to the man who made the change in the scaffolding. There was no scaffolding on any side of the building except the east side; he did not know whether the board fell to the ground with him or not. Williams had told him to go to work on the scaffolding when he first came down to the job. He did not carry cement with him when he went up the second time, but went up to go back to work; he did not test it but supposed the man Williams told to fix it had fixed it alright. He was taken to the doctor, who set his arm, suffered for eight days almost unbearable pain, had to wear his arm in a sling for 40 days, unable to work for more than 100 days, was iron and brass moulder by trade, at which he got three dollars and a half and $4.50 a day; that at the time of the accident he was a cement finisher at $2.00 per day, had been promised a raise by Cesery & Co. if he made good, spent about $3.00 for linament, and still suffers.

Joe Rafford went to work on November 4, 1909, at the foot of Newnan street for Cesery Company on the pumping station job. There were working on that job Walter Williams, Joe Lyed, Herbert Schuman, J. B. Fitzsimmons and himself; he was working on the south side of the

building on a scaffolding which had been built by himself and Schuman. Schuman was working with him and Walter Williams was foreman in charge, came around from the west side of the building and told Schuman to go around and raise the south end of the scaffolding on the east side of the building. Schuman went around and did so, by putting a 2 x 4 across the step-ladder and a longer one lengthwise and putting the board on top. Fitzsimmons went around talking to Williams on the west side when this was being done. He came around and walked up the step-ladder and stepped on the scaffolding and it fell with him. Schuman and Rafford built the scaffolding on the south side that morning, but the one on the east side had been constructed when Rafford went to work. He did not see Fitzsimmons until the time of the accident.

Joe Lyed was working on the pumping station for A. J. Cesery Co. at the foot of Newnan street with Joe Rafford and Herbert Schuman, J. B. Fitzsimmons, Walter Williams was superintendent in charge for the A. J. Cesery & Co. On the 4th of November, 1909, he helped Schuman build the scaffolding on the east side of the building; he had previous helped Schuman build another scaffolding on the west side of the same building.

After the scaffolding had been built that morning, he went inside to mix cement and while there heard Williams, the foreman, outside, tell Schuman to raise one end of the scaffolding which had been built by Lyed and Schuman. Schuman raised one end and after that Fitzsimmons went up the scaffold and it fell with him, and he got hurt. He went around after the accident and saw Walter Williams pick him up; he heard him say 'Are you trying to kill somebody? He had been working for A. J. Cesery Co. about four weeks, and Schuman was working for the company when he first came with them. Schu-

man's work was building scaffoldings and making cement for the A. J. Cesery & Co.

That the plaintiff was attended by Dr. J. H. Durkee, who set the dislocation and stated he might be disabled 3 or more week, and that he might carry his arm in a sling from 3 to 5 weeks, that the setting of the disloca- tion was only a matter of a minute; that he necessarily suffered pain at the time of setting the dislocation and afterwards complained of pain because of the tight bandage, and which was released by the doctor; the doc- tor's charges were $25.00; that he would be unable for some weeks to suddenly pick up with the arm dislocated any heavy weight but with work only requiring ordinary sidewise use of the left arm or only requiring the right arm he could have gone to work within a few days.

Walter Williams was by trade a carpenter, but also a cement-work worker employed by the A. J. Cesery & Co., and was in the charge of the pumping station job at the foot of Newnan street Nov. 4, 1909; that there were work- ing there at that time Walter Williams, Joe Rafford, Joe Lyed, Herbert Schuman and J. B. Fitzsimmons, for the A. J. Cesery & Co."

This demurrer to the evidence was sustained and final judgment was entered for defendant. On writ of error the plaintiff assigns as errors the ruling on the demurrer to the evidence and the final judgment entered thereon.

An employer is liable in compensatory damages for injuries to employees caused by the negligent performance or non-performance of any duty to the employees devolv ing upon the employer by virtue of the express or implied requirements of the employment whether such duty is negligently performed or omitted by the employer or by one acting in the place and stead of the employer. The particular duties imposed upon the employer with refer-

ence to the employees may depend to some extent at least upon the circumstances of the employment and of the service. An employer assumes the duty towards his employee of exercising reasonable care and diligence to provide the employee with a reasonably safe place at which to work, and when the employer has properly discharged this and all other duties to the employee, then, at common law, the servant assumes all the risks and hazards incident to or attendant upon the rendering the service that are obvious or reasonably should have been known and appreciated by the employee before the injury and that do not involve negligence of the employer. Stearns & Culver Lumber Co. v. Fowler, 58 Fla., 362, 50 South. Rep., 680; German-American Lumber Co. v. Brock, 55 Fla., 577, 46 South. Rep., 740; Jacksonville El. Co. v. Sloan, 52 Fla., 257, 42 So. Rep., 516.

If an employee negligently fails to exercise ordinary care for his safety, he cannot in general recover damages for an injury caused by his negligence. Under the common law, a plaintiff cannot recover damages for injury to himself caused by the negligence of another if he has in any appreciable way contributed to the proximate cause of the injury. This rule has not been changed in this State in this class of cases. German-American Lumber Co. v. Hannah, 60 Fla., 70, 53 South. Rep. 516.

A demurrer to the evidence properly submitted should be overruled when upon the evidentiary facts stated therein and the inferences fairly to be drawn therefrom a finding for the plaintiff may lawfully be predicated, the weight and credibility of the evidence being for the jury to determine. Atlantic Coast Line R. Co. v. McCormick, 59 Fla., 121, 52 South. Rep., 712; Mugge v. Jackson, 50 Fla., 235, 39 South. Rep., 157; Ingram v. Jacksonville St. R. Co., 43 Fla., 324, 30 South. Rep., 800.

From the facts set out in the demurrer to the evidence a jury might fairly infer that the person who asked if the scaffold was too low at the south end, and who had the low end of the scaffold raised, was the representative of the employer whose duty it was to exercise reasonable care and diligence to have a safe place for the plaintiff employee to work. It may also be found from the testimony that the scaffold was negligently fixed and was unsafe, that the representative of the employer had not exercised reasonable care in having the scaffold fixed, that the danger was not obvious, and was not, and could not reasonably have been, discovered by the employee before the injury without a closer observation that he was required to make, and that the negligence in fixing the scaffold was the proximate cause of the injury to the plaintiff as alleged, to which he did not proximately contribute. The demurrer to the evidence should have been overruled, and the testimony submitted to a jury. This case is unlike that of Green v. Sansom, 41 Fla., 94, 25 South. Rep., 332. Whether the evidence does in fact warrant a finding for the plaintiff is for the determination of the jury. The court considers only the facts and inferences admitted by the demurrer to the evidence, and expresses no opinion as to the credibility, the weight or the sufficiency of the testimony as proof of the defendant's liability or of the damages as alleged.

The judgment is reversed.

SHACKLEFORD and COCKRELL, J. J., concur;

TAYLOR, HOCKER and PARKHILL, J. J., concur in the opinion.